Filed 6/22/15

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BENJAMIN ROJAS,<br><br>    Defendant and Appellant. | F067157<br><br>(Super. Ct. No. F11904625)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A Fresno County jury found Benjamin Rojas guilty of sexually abusing his young stepdaughter in violation of Penal Code sections 288.5 and 288.7 (all further statutory references are to the Penal Code).  Rojas was sentenced to 40 years to life in prison pursuant to section 288.7, subdivisions (a) and (b).  A 12-year prison term was imposed for the section 288.5 conviction and stayed pursuant to section 654.

Appellant's claims fall into three general categories: instructional error, procedural error, and sentencing error. With respect to instructional error, his briefs contain multiple arguments stemming from the trial court's use of a modified version of CALCRIM No. 207. We address these arguments in turn as they pertain to each of his three counts of conviction. The claims of procedural error and sentencing error are moot in light of our conclusion that the conviction under section 288.7, subdivision (a) must be reversed. However, this partial reversal of the judgment invalidates the stay that was ordered pursuant to section 654. We therefore remand the matter for resentencing on the section 288.5 conviction. The judgment is otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Rojas was charged by information with oral copulation or sexual penetration of a child under the age of ten years (§ 288.7, subdivision (b); Count 1), sexual intercourse or sodomy with a child under the age of ten years (§ 288.7, subdivision (a); Count 2), and continuous sexual abuse of a child under the age of 14 years (§ 288.5; Count 3). Each offense involved Rojas' stepdaughter, who was born in December 2002. As pleaded in the information, Count 1 occurred "[o]n or about August 6, 2011," when the victim was eight years old. Counts 2 and 3 allegedly occurred "[o]n or about December 1, 2006 through August 5, 2011," when the victim was between the ages of four and eight. Rojas was between 35 and 40 years old during the relevant time period.

All charges were tried before a jury in March 2013. Given the nature of the issues raised on appeal, we will provide an abbreviated summary of the underlying facts. Additional information concerning the claims of instructional error is provided in the Discussion.

On or about August 6, 2011, Rojas' wife awoke in the middle of the night and found herself alone in bed. After getting up and searching through the house, she located Rojas in her daughter's room. He was naked, and her daughter was clothed only from the waist up. According to the mother's trial testimony, the child accused Rojas of touching

2.

her vaginal area with his fingers. She also said that Rojas had previously molested her "a few times." A witness who spoke to Rojas' wife two days after the incident recalled that she claimed the victim told her Rojas had "used his mouth" while touching her.

The victim was questioned by police and interviewed by professionals who specialize in investigating allegations of sexual abuse. She told police that Rojas penetrated her using his fingers and penis on the night her mother walked in on them. The victim also reported that Rojas had abused her in a similar fashion approximately ten times, beginning when she was three or four years old. She provided the same timeline for the abuse in a subsequent interview.

At trial, the victim testified that Rojas molested her approximately four times, but could not recall how old she was when the abuse first started. With regard to the night her mother caught him in her bedroom, she described acts of anal and genital touching which Rojas committed using his fingers and penis. She denied that any form of oral copulation had occurred.

A police officer testified that Rojas made a confession during an unrecorded custodial interview. He reportedly admitted inserting his fingers into the victim's vagina during the early morning hours of August 6, 2011, but claimed it was the first and only time he had ever molested her. The jury was also shown a letter written by Rojas in which he apologized to his wife and stepdaughter for his "error." DNA testing established that Rojas was the source of multiple semen stains found on the victim's bed sheets.

The jury deliberated for approximately one hour before finding Rojas guilty on all counts. He was thereafter sentenced to a total of 40 years to life in prison. The sentence was calculated as follows: As to Count 1, a mandatory term of 15 years to life. As to Count 2, a mandatory term of 25 years to life, to be served consecutively. The trial court imposed the middle term of 12 years for Count 3, which was stayed pursuant to section

3.

654 under the assumption that Count 2 involved one of the same incidents upon which the Count 3 conviction was based. This timely appeal followed.

## DISCUSSION

**Jury Instructions**

The trial court instructed the jury using CALCRIM No. 207, which read as follows:

> It is alleged that the crime in Count 1 occurred on or about August 6, 2011. The People are not required to prove that the crime in Count 1 took place exactly on that day, but only that it happened reasonably close to that day.
>
> It is alleged that the crimes in Counts 2 and 3 occurred on or about December 1, 2006, through August 5, 2011. The People are not required to prove that those crimes took place exactly during those time periods, but only that they happened on a date or dates after August 12, 2005.

This instruction was requested by the prosecution and was given without objection from the defense. Reference to August 12, 2005 was apparently intended to denote the earliest possible accrual point for the statute of limitations.

Count 1

Rojas alleges error in the portion of the instruction that told jurors, "The People are not required to prove that the crime in Count 1 took place exactly on [August 6, 2011], but only that it happened reasonably close to that day." He argues this language permitted the jury to convict him under both Counts 1 and 2 for the same criminal act. His position is largely dependent upon the incorrect assertion, made in his opening brief, that the jury did not receive a unanimity instruction as to Count 1. Rojas acknowledges the mistake in his reply brief, but complains that the unanimity instruction was only given orally, and was not included in the written instructions.

The Attorney General correctly argues that Rojas should have objected to the instruction at the time of trial. "A party may not complain on appeal that an instruction

4.

correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Lang* (1989) 49 Cal.3d 991, 1024.) CALCRIM No. 207 accurately states the general rule that when a crime is alleged to have occurred "on or about" a certain date, it is not necessary for the prosecution to prove the offense was committed on that precise date, but only that it happened reasonably close to that date. (§ 955; *People v. Richardson* (2008) 43 Cal.4th 959, 1027; *People v. Jennings* (1991) 53 Cal.3d 334, 358-359 (*Jennings*).) Rojas could have asked for modification or clarification of the instruction he now challenges, and his failure to do so triggered the forfeiture rule. We thus review the alleged instructional error only to determine if his substantial rights were affected (§ 1259), i.e., whether the giving of CALCRIM No. 207 resulted in a miscarriage of justice. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.)

Rojas cites and relies upon *People v. Gavin* (1971) 21 Cal.App.3d 408 (*Gavin*) as standing for the proposition that CALCRIM No. 207 should not be used "when two similar offenses are charged in separate counts." His interpretation of that case is overreaching. It is only "when the prosecution's proof establishes the offense occurred on a particular day to the exclusion of other dates, and when the defense is alibi (or lack of opportunity), [that] it is improper to give the jury an instruction using the 'on or about' language." (*Jennings*, *supra*, 53 Cal.3d at pp. 358-359.)

In *Gavin*, the defendant was accused of unlawfully possessing lysergic acid dimethyltryptamine (LSD) and amphetamine on or about October 25, 1969. (*Gavin*, *supra*, 21 Cal.App.3d at p. 411.) The defendant disputed the charges, but gave testimony in which she admitted to briefly possessing amphetamine on a different date, September 27, 1969. (*Id*. at p. 416.) The jury was instructed with CALJIC No. 4.71, which closely mirrored the language currently found in CALCRIM No. 207, and during its deliberations expressed confusion over whether the defendant could be convicted for the uncharged instance of amphetamine possession that occurred a month prior to the events at issue.

5.

(*Id*. at pp. 416-417.)  The defendant was ultimately acquitted of possessing LSD, but convicted on the amphetamine charge.  The Second District reversed the conviction after concluding that "[t]he [trial] court's failure to clear up the jury's confusion regarding the September 27 'possession' was fundamentally unfair to the defendant."  (*Id*. at p. 418.)

Unlike in *Gavin*, the jury below expressed no confusion over the "on or about" language in CALCRIM No. 207, nor was there any evidence of uncharged criminal acts upon which the Count 1 conviction could have mistakenly been based.  The prosecution requested the instruction to account for a slight evidentiary discrepancy regarding whether Rojas' wife caught him abusing the victim in the late night hours of August 5 or the early morning hours of August 6, 2011.  The wife believed the correct date to be August 6, but testified that she was not sure if the incident "took place at about midnight or 1:00 in the morning."  The victim told an interviewer that her mother learned of the abuse on "Friday night," which would have been August 5.  Either way, there is nothing in the record to suggest the jury did not fully understand Count 1 applied to the incident that occurred on the night when Rojas' wife found him naked in the victim's bedroom.  In other instructions, the jury was told: "Each of the counts charged in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."  Under these circumstances, and based on the evidence presented at trial, there is no likelihood that the verdict for Count 1 would have different had the challenged instruction not been given.

Rojas' claim that the jury did not receive a written unanimity instruction is puzzling because, according to the Supplemental Clerk's Transcript (prepared as a result of Rojas' motion to augment the record), the jurors *were* provided a written unanimity instruction for Count 1 which included the standard language of CALCRIM No. 3500.  Were we to assume Rojas could prove the instruction was left out of the jury's packet of written instructions, we would find the omission to be inconsequential.  There is no constitutional right to written jury instructions under state or federal law.  (*People v.*

6.

*Samayoa* (1997) 15 Cal.4th 795, 845.) California requires augmentation of oral instructions with written instructions only upon request (§ 1093, subd. (f)), and even then, the omission of a written instruction does not vitiate its oral counterpart. (*People v. Trinh* (2014) 59 Cal.4th 216, 234.) Rojas acknowledges that a unanimity instruction was provided orally as to Count 1, and we presume the jury heard the instruction and followed it accordingly. (*Id.* at p. 235.)

Count 2

With respect to Count 2, Rojas argues that the modified CALCRIM No. 207 instruction resulted in an ex post facto violation insofar as jurors were told he could be convicted of violating section 288.7, subdivision (a), if they found the offense occurred on a date subsequent to August 12, 2005. In a separate argument, he claims the trial court failed to provide a unanimity instruction for Count 2 (which is true), and that the absence of such an instruction constituted reversible error. Since the ex post facto claim is well taken, we need not consider the ramifications of the missing unanimity instruction.

Our state and federal Constitutions prohibit ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1163 (*Delgado*).) Any law that applies to events occurring before its enactment and which disadvantages the offender either by altering the definition of criminal conduct or increasing the punishment for the crime is prohibited as ex post facto. (*Delgado*, *supra*, 140 Cal.App.4th at p. 1164.) Section 288.7 was enacted in 2006 and became effective on September 20 of that year. (Stats. 2006, ch. 337, § 9.) The statute created a new offense which imposes an indeterminate life sentence for sexual intercourse, sodomy, oral copulation, or sexual penetration of a child who is 10 years of age or younger. (*Ibid.*; *People v. Cornett* (2012) 53 Cal.4th 1261, 1267.) Therefore, any application of section 288.7 to conduct that occurred prior to September 20, 2006 is a violation of the state and federal ex post facto clauses.

"[I]t is the prosecution's responsibility to prove to the jury that the charged offenses occurred on or after the effective date of the statute providing for the defendant's punishment." (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 256 (*Hiscox*).) Although Rojas did not make an ex post facto challenge below, respondent concedes that the claim may be raised for the first time on appeal and should be reviewed under the harmless error standard described in *Chapman v. California* (1967) 386 U.S. 18, 24. (*Hiscox*, *supra*, 136 Cal.App.4th at pp. 258, 261; *People v. Farley* (1996) 45 Cal.App.4th 1697, 1710.) Since the jury was not asked to make a finding that Count 2 occurred after the effective date of section 288.7, its verdict "cannot be deemed sufficient to establish the date of the offense[] unless the evidence leaves no reasonable doubt" that the conviction was based on an incident that occurred on or after September 20, 2006. (*Hiscox,* at p. 261.)

Respondent argues that because the instruction said Count 2 was alleged to have occurred on or about December 1, 2006 through August 5, 2011, "no reasonable juror could find a violation of section 288.7 occurred before December 1, 2006." We are not persuaded by this reasoning. Whereas the first paragraph of the instruction discussed the prosecution's burden to show that Count 1 occurred on a date "reasonably close" to the time period alleged in the information, the second paragraph omitted the "reasonably close" language and instead advised that, notwithstanding the time period alleged for Counts 2 and 3, it was sufficient for jurors to find those offenses "happened on a date or dates after August 12, 2005." The second paragraph is objectively confusing.

Considering jurors were aware the victim was born in December 2002, it is certainly possible that they interpreted the reference to 2005 as bearing some relationship to her statements that the abuse began when she was "three or four years old." Apart from this estimate, there was no evidence to show when any of the crimes committed prior to the incident in Count 1 had occurred. If the jury's verdict on Count 2 was based on an event that took place when the victim was three years old, the crime could have

8.

happened any time between December 2005 and December 2006, and most of that period fell outside of the date when section 288.7 went into effect, i.e. September 20, 2006. As stated in *Hiscox*, *supra,* "[i]t would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date." (*Hiscox*, *supra,* 136 Cal.App.4th at p. 261.) "For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to 'judicial impingement upon the traditional role of the jury.'" (*Ibid*., quoting *Blakely v. Washington* (2004) 542 U.S. 296, 309.) Because the record allows for reasonable doubt over whether Count 2 was based on an act that occurred on or after September 20, 2006, the conviction and accompanying sentence must be reversed.

Count 3

Rojas submits that Count 3 is also subject to reversal on ex post facto grounds, but offers no further analysis or argument in support of his contention. We reject this claim. The law governing continuous sexual abuse of a child under the age of 14 was codified by the enactment of section 288.5 in 1989 and went into effect on January 1, 1990. (Stats. 1989, ch. 1402, § 4; *People v. Rodriguez* (2002) 28 Cal.4th 543, 546; *People v. Grant* (1999) 20 Cal.4th 150, 153.) Section 288.5 was amended in 2006, but the revisions did not change the elements of the offense or increase the penalty for a conviction. (Stats 2006, ch. 337, § 8.) Both the current and former versions of the statute make the crime punishable by imprisonment for a term of 6, 12, or 16 years. (§ 288.5, subd. (a); Stats 2006, ch. 337, § 8; Stats. 1989, ch. 1402, § 4.) Since the 2006 amendment did not change the legal consequences of any acts committed before its effective date, use of the modified CALCRIM No. 207 instruction for Count 3 did not result in an ex post facto violation. (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 172-173; *People v. Ansell* (2001) 25 Cal.4th 868, 884.)

9.

**Violation of Section 288.5, subdivision (c)**

Appellant contends, and respondent concedes, that the prosecution was statutorily prohibited from charging Counts 2 and 3 in a manner which sought, and led to, dual convictions for violations of section 288.5 and 288.7 that occurred during the same time period. Such a result is precluded by section 288.5, subdivision (c). In other words, continuous sexual abuse in violation of section 288.5, subdivision (a) and any discrete sexual offense committed against the same victim within the same time period must be charged in the alternative. (§ 288.5, subd. (c); *People v. Johnson* (2002) 28 Cal.4th 240, 244-248 (*Johnson*).) A defendant may be convicted of either offense, but not both. (*Johnson*, *supra*, 28 Cal.4th at p. 248.)

There is authority from the Third District which holds that a dual conviction in violation of section 288.5, subdivision (c) cannot be challenged on appeal unless the defendant demurred to the charging document, which Rojas did not do. (*People v. Goldman* (2014) 225 Cal.App.4th 950, 956-957.) We need not consider the question of forfeiture here since we are reversing Count 2 on other grounds. For the reasons that follow, we conclude the issue is moot.

In *Johnson*, *supra*, the California Supreme Court held that when multiple convictions are obtained in violation of section 288.5, subdivision (c), "either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*Johnson*, *supra*, 28 Cal.4th at p. 245.) However, *Johnson* does not explain how appellate courts are to determine which convictions to vacate when the scenario arises. The First District's opinion in *People v. Torres* (2002) 102 Cal.App.4th 1053 (*Torres*), holds that the remedy will depend on how the defendant's sentence is affected. Under *Torres*, it is appropriate, "in deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), that we leave [the defendant] standing convicted of the alternative offenses that are most commensurate with his culpability." (*Id*. at p. 1059.) This will

10.

ordinarily translate to upholding whichever conviction resulted in the greater aggregate penalty and vacating the less serious count. (See *Id*. at pp. 1060-1061.) Here, since Count 2 is being reversed, there is no choice to be made.

Although section 288.5 carries a less severe penalty than is mandated by section 288.7, subdivision (a), there is no cause to vacate Count 3 in addition to the reversal of Count 2. Such an outcome would result in an unwarranted and inequitable windfall in Rojas' favor, which would not leave him standing convicted of an alternative offense commensurate with his culpability. We thus conclude, apart from any considerations of forfeiture, that the section 288.5, subdivision (c) issue is rendered moot by our reversal of appellant's conviction under Count 2 on other grounds.

**Sentencing Issues**

All of appellant's claims with respect to sentencing concern the trial court's imposition of a consecutive sentence for Count 2, as opposed to a concurrent or stayed term of imprisonment. These issues are obviously mooted by our reversal of his conviction on that count. The reversal does, however, impact Rojas' sentence under Count 3. With respect to Count 3, the stay of Rojas' 12-year prison term pursuant to section 654 is no longer valid in the absence of the Count 2 conviction upon which the stay was based. (See § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment…."][.) Staying the execution of a sentence is a procedural device that allows trial courts to comply with section 654 without risking the possibility that a defendant will escape punishment if the count which carries the greater term of imprisonment is reversed or vacated on appeal. (*People v. Duff* (2010) 50 Cal.4th 787, 795-796.) The stay is necessarily contingent upon the defendant's completion of the sentence imposed for the greater offense. (See *id*. at p. 796.) We will remand for resentencing on Count 3 to allow the trial court to lift the stay of execution of the prison term for the section 288.5 conviction.

11.

## **DISPOSITION**

The judgment is affirmed in part and reversed in part as stated above. The conviction under Count 2 for violation of section 288.7, subdivision (a) is reversed. The Count 1 conviction and accompanying sentence for violation of section 288.7, subdivision (b) is affirmed. The conviction under Count 3 for violation of section 288.5 is affirmed. The matter is remanded for resentencing only as to Count 3, and for any other proceedings consistent with this opinion as may be appropriate. The judgment is affirmed in all other respects. Upon resentencing of the defendant under Count 3, the trial court shall issue an amended abstract of judgment and forward a certified copy of same to the Department of Corrections and Rehabilitation.

_____

GOMES, J.

WE CONCUR:


_____

HILL, P. J.


_____

LEVY, J.

12.