Filed 1/26/16  P. v. Williams CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050309 |
| v. | (Super. Ct. No. 10NF2295) |
| WILLIAM THOMAS WILLIAMS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Reversed and remanded.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant William Williams appeals from his conviction under Penal Code section 288.7, subdivision (a), which penalizes sexual intercourse or sodomy with a child 10 years of age or under.[1] He asserts, first, that a jury instruction misled the jury as to a crucial element of the crime and, second, that insufficient evidence supported his conviction under the statute.

Appellant does not dispute that he molested his daughter, L.W., beginning when she was in elementary school until she reported the abuse at age 14. The core issue is when he began having intercourse with her. Section 288.7 became effective in September 2006. L.W. aged out of the statute when she turned 11 in February 2007. Thus, the prosecutor had to establish that one act of intercourse took place during that five-month period. Appellant contends that insufficient evidence supports his conviction for an act of intercourse during the crucial five months, between the effective date of the statute and L.W.'s 11th birthday.

The disputed jury instruction is CALCRIM No. 207: "It is alleged that the crime occurred on [or about] _____ <insert alleged date>. The People are not required to prove that the crime took place exactly on that day but only that it happened reasonably close to that day." Appellant contends that a modified version of this instruction – to which his counsel assented at trial – implied to the jurors that they did not have to focus on the five-month period but could convict him for an act occurring outside it, so long as the act or acts happened "reasonably close" to the dates in question.

We agree with appellant that the jury instruction was flawed as it applied to the count based on section 288.7, subdivision (a). We also agree that other jury instructions and closing argument did not cure the defect. While we disagree with appellant that there was *no* evidence of criminal activity during the crucial period, we

---

[1] All further statutory references are to the Penal Code.

2

believe that the evidence was sufficiently confused and conflicting to have resulted in prejudice to him.  Accordingly, we reverse the conviction for section 288.7, subdivision (a), and remand the matter to the trial court for resentencing.

## FACTS

L.W. testified that her father began molesting her when she was in elementary school, first by putting his fingers in her vagina and then through sexual intercourse.  The abuse continued until L.W. was 14, when, in July 2010, she confided in her grandmother, who promptly called the police.  Williams was tried on multiple counts of lewd acts in December 2013, and convicted on all of them.

The statutes under which Williams was charged specified different ages of the victim: "10 years or younger" (§ 288.7, subd. (a)), "under the age of 14 years" (§ 288, subd. (a)), and "14 or 15 years" (§ 288, subd. (c)(1)), so the prosecution tried to establish a time line.  Because of the passage of time and of L.W.'s young age when the abuse occurred, the prosecutor sought to link the events in question to L.W.'s grade in school as an aide memoire.  She used as another milestone the departure of L.W.'s mother from the family home in November 2005.

L.W.'s mother testified that L.W. entered kindergarten when she was six years old.  L.W. turned six in February 2002; her mother testified that she began kindergarten in the fall of her sixth year, September 2002.  L.W. testified that her father began abusing her, through digital penetration, at the end of second grade, which would have been the spring of 2005.[2]  L.W.'s mother moved out of the family home in November 2005; L.W. testified that her mother moved out at the beginning of third grade.

L.W. also testified during the trial, in December 2013, that she was a senior in high school, due to graduate in June 2014.  If she started kindergarten at age six in

---

[2]  If L.W. started kindergarten in the fall of 2002, she would have started second grade in the fall of 2004.

3

2002, however, and had not skipped any grades (as she testified she had not), she would have been a junior in December 2013 and not due to graduate until June 2015.

It is highly unlikely a 17-year-old girl would be mistaken about her current high school grade. So if L.W. was correct in her December 2013 testimony – that she was at that time a senior in high school – then she must have started first grade, not kindergarten, in the fall of 2002. That date brings her elementary, middle, and high school career to a close in June 2014, but it also creates confusion when trying to link her age, her grade in school, and the onset of abuse. According to the first time line, her father began abusing her at age nine; according to the second time line, he began when she was eight. Compounding the confusion, the prosecutor also tied the beginning of the abuse to the date L.W.'s mother moved out of the house (November 2005).[3] Going by this testimony, L.W. was nine when the abuse started, and her mother moved out of the house at the beginning of L.W.'s fourth grade, not third grade as she had testified.

The reason L.W.'s age when the abuse started is important is that L.W. testified at trial that the defendant did not begin with intercourse, but rather with digital penetration.[4] She testified that she was not sure when intercourse began or what grade she was in, but it was "a few years" after the digital penetration began. She recalled that intercourse began after she broke her arm when she was nine or ten and after the cast came off, but she could not pinpoint a time with any more precision than that. In response to the prosecutor's direct question about when intercourse began, she stated, "I want to the say ten [*sic*], but I'm not exactly sure." She testified she was still in elementary school at the time. She could not recall how long before she entered middle school the intercourse started.

---

[3] The second time line also implies that L.W.'s mother was living in the family home for over a year while the molestation was occurring. The first time line has her moving out a few months after it started.

[4] Appellant was not charged under section 288.7. subdivision (b), which would have covered digital penetration while L.W. was 10 years old or younger.

4

After her grandmother reported appellant's conduct to the police in July 2010, two social workers and a police officer interviewed L.W. One of the social workers and the officer testified at trial. The social worker testified L.W. told him her father had been raping her for the prior two years, i.e., since she was 12 years old. The police officer testified L.W. had told him intercourse began "right after her mother moved out," around "the third or fourth grade."[5]

L.W.'s grandmother (appellant's mother) testified at trial as well, regarding statements she had made to police in July 2010 and statements L.W. had made to her before she reported the abuse to the authorities. The grandmother could not recall what L.W. had told her at the time of the report, and reading a transcript of her interview with the police did not refresh her recollection of what she had said to the officer. An objection to the prosecutor's reading from the transcript was sustained.

The trial court and counsel discussed jury instructions on the penultimate day of trial. The court stated, "[CALCRIM] No. 207 I modified it to read as follows, counsel, and tell me if your [sic: you're] both okay with this. It is alleged that the crime charged in each count occurred within various date ranges and then I would propose to give the remainder of the instruction. Is that satisfactory with everybody?" Both counsel agreed. The next day, the court revised the instruction: "Going back to CALCRIM number 207 [the prosecution] provided a modified 207 that simply looks like it list[s] all the counts and the time frames." The court then asked defense counsel whether he approved, and counsel said yes. The court also agreed to give the defense version of

---

[5]     During L.W.'s cross-examination, counsel read from a report or transcript of her interview with the police officer. According to the report, L.W. had said, "'I don't know, like, I don't know. I think it was either in third or fourth grade I think."

CALCRIM No. 3501, the unanimity instruction.[6] Defense counsel professed himself satisfied with the instructions.

During closing argument, defense counsel did not attempt to convince the jury that the defendant had not molested his daughter. Instead, he stated, "[F]rom the very beginning of this case this has always been about when something happened, not if." Counsel mainly focused on trying to convince the jury that the People had not proven that appellant had begun molesting his daughter until 2008, when she was twelve. In other words, he was guilty of 8 counts, not all 11.

The jury convicted appellant of all 11 counts. He was sentenced to a term of 47 years to life. He appeals only from his conviction for Count 3.

## DISCUSSION

Count 3 charged Williams with violating section 288.7, subdivision (a), which provides: "Any person 18 years of age or older who engages in sexual intercourse or sodomy with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 25 years to life." (§ 288.7, subd. (a).) This statute became effective on September 20, 2006. Once the child passes his or her 11th birthday, the statute no longer applies. (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1265-1266, 1275.)

L.W. turned 10 in late February 2006. By the end of February 2007, she was over the age specified in the statute. Thus Williams could have violated the statute only between the date it became effective in September 2006 and L.W.'s 11th birthday.

---

[6] As given to the jury, the instruction read, "Each count alleges that [the defendant] committed a crime within a specific date range. If you find that the People have presented evidence of more than one act to prove that [the defendant] committed the charged crimes within the specified date range, you must not find [the defendant] guilty unless, one, you all agree that the People have proved that the defendant committed at least one of these acts within the specified date range and you all agree on which act he committed for each offense or, two, you all agree that the People have proved that the defendant committed all the acts alleged to have occurred during the specified time period."

When it charged the jury, the trial court gave date ranges for all counts at once. The court stated, "It is alleged that the crime charged in Count 3 occurred on or about and between [*sic*] September 21, 2006, and February . . . , 2007." After giving the date ranges for the remaining counts, the court stated, "The People are not required to prove that the crimes took place exactly on these dates but only that they happened reasonably close to those dates." The trial court gave this instruction before closing argument.

"In reviewing claims of instructional error, we look to whether the defendant has shown a reasonable likelihood that the jury, considering the instruction complained of in the context of the instructions as a whole and not in isolation, understood that instruction in a manner that violated his constitutional rights. [Citations.] We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given. [Citations.]" (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

The instruction issue in this case is similar to the one in *People v. Rojas* (2015) 237 Cal.App.4th 1298 (*Rojas*). In *Rojas,* the instruction implied that the jury could convict the defendant of a violation of section 288.7 if it found that a prohibited act had occurred during a time period before the statute became effective. (*Id.* at p. 1307.) The court held that the challenge to this instruction could be raised for the first time on appeal (*id.* at p. 1306) and that the instruction regarding time periods was "objectively confusing." (*Id.* at p. 1307.) As the court stated, "'[i]t would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date.' [Citation.] "'For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to "judicial impingement upon the traditional role of the jury."'" [Citation.] Because the record allows for reasonable doubt over whether [the § 288.7 count] was based on an act that occurred

7

after [the statute's effective date], the conviction and accompanying sentence must be reversed." (*Ibid.*; cf. *People v. Riskin* (2006) 143 Cal.App.4th 234, 244-245 [instruction on time period wrong as a matter of law; reversal required].)

In this case, the disputed instruction distracted the jury's focus from a crucial set of dates, implying that an act occurring outside the designated time period could serve as a basis for conviction, when as a matter of law it could not. Thus the jury could well have convicted appellant for a violation of section 288.7, subdivision (a), under the impression, for example, that whether an act of intercourse took place after L.W.'s 11th birthday was unimportant, so long as it took place "reasonably close" to that date.

The Attorney General argues that the unanimity instruction, CALCRIM No. 3501, cured any defect of CALCRIM No. 207 as presented to this jury. We disagree. The former instruction had a different focus. It required the jury (1) to agree that the defendant committed one unlawful act within a date range and (2) to agree as to which act this was or (3) to agree that all the acts alleged during a time period occurred. "The unanimity instruction assists in focusing the jury's attention on each such act related by the victim and charged by the People." (*Jones, supra,* 51 Cal.3d at p. 321.) The focus is on agreeing about the act, not so much on dates. The instruction given in this case did not restate the relevant date ranges. The jury could well have applied this instruction correctly and still have been misled by CALCRIM No. 207 as given. All the jurors could have agreed an act that was "reasonably close" to the specified dates was the one supporting conviction for violation of section 288.7, subdivision (a).[7] (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 662 [incorrect instruction had potential to override or cancel out correct instruction].)

---

[7] The other jury instructions mentioned as curative dealt with intent (CALCRIM No. 252) and uncharged acts (CALCRIM No. 1191). Neither instruction focused on dates.

8

Finally, the Attorney General argues that closing argument properly directed the jurors' attention to the time limits for Count 3. Again, we disagree. During the first part of her closing argument, the prosecutor presented the jury with a chart of L.W.'s age based on her testimony that she was a senior in December 2013 – one that counted grades backwards from trial. The prosecutor then told that jury that L.W. had testified as to the beginning of intercourse: "[L.W.] believed that the intercourse she said 'started when I was about ten, I believe.'" What L.W. actually said was "I want to the say ten [*sic*], but I'm not exactly sure." This part of the prosecutor's argument focused on the specific dates for Count 3 only once, when she said, "Count 3, the date looks weird to you, right, because it's not on or about her birthday. It's September 21st of 2006. Well, that's because Count 3 . . . was enacted into law in September of 2006. So the defendant can't be charged with sexual intercourse with a child ten years or younger before September of 2006." The prosecutor did not mention the cutoff date of L.W.'s 11th birthday or warn the jury that the "reasonably close" language of the jury instruction it had already heard did not apply to Count 3. During the rest of the argument, the prosecutor simply assumed that intercourse had begun when L.W. was 10 years old, even citing L.W.'s grandmother's testimony, to which an objection had been sustained.

The defense counsel's closing argument concentrated on the vagueness of the evidence regarding time periods, but did not single out Count 3 for special attention. He did not direct the jury's attention to the narrow time range for that count or discuss the "reasonably close" language of the jury instruction. His main focus was on persuading the jury of a reasonable doubt that any abuse occurred before 2008.

During the final closing argument, the prosecutor reiterated the date range for Count 3: "this count . . . goes all the way up until she is 10 and 364 days. Goes all the way up to and including the day before her eleventh birthday." She did not mention the application of the "reasonably close" jury instruction on this range.

9

Instructional error regarding elements of an offense requires reversal unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Chun* (2009) 45 Cal.4th 1172, 1201.) Given the state of the evidence in this case, we cannot conclude that the error was harmless.

We have already discussed the conflicting time lines and the various markers (grade in school, broken arm, mother's departure) that move around depending on the time line under consideration. The instability of the chronological evidence made anchoring the date when intercourse started a nearly impossible task.

L.W.'s testimony on the subject was extremely vague.

"Q. Do you remember the first time that your dad put his penis in your vagina?

"A. Um, no.

"Q. The first time that your dad put his penis in your vagina, do you remember where you were?

"A. No.

"Q. Do you remember whether you were at the family home?

"A. I was home, yes.

"Q. But you don't remember where inside the home?

"A. No.

"Q. The first time that he put his penis in your vagina, do you remember what grade you were in?

"A. No.

"Q. Do you remember how old you were?

"A. I want to the say ten [*sic*], but I'm not exactly sure.

"Q. When you say 'I want to say 10,' is there something about when you were ten that you remember?

"A. Um, I just – I remember it was after a few years.

10

"Q. When you say after a few years, it was after a few years of him inserting his fingers into your vagina?

"A. Yes.

"Q. So after a few years of him inserting his fingers into your vagina, he began to insert his penis into your vagina?

"A. Yes.

"Q. Were you still in elementary school?

"A. Yes.

"Q. You were still talking to that best friend of yours?[8]

"A. Yes.

"Q. How old were you when you started middle school?

"A. I believe I was 12.

"Q. And how long before you started middle school – how long was it before you started middle school that your dad put his penis in your vagina?

"A. I don't remember exactly.

"Q. You said that you believed you were ten and I want to talk to you about that for a moment.

"Did anything other than your dad touching you and putting his penis in your vagina, did anything notable happen when you were ten, something that you remember, something that stand out?

"A. I had broken my arm when I was 9 or 10, I remember it was after I broke my arm.

"Q. How long after you broke your arm was it?

"A. I don't know.

---

[8] L.W. testified earlier that one of the ways she could remember whether events occurred in elementary school or middle school was that she had a friend in elementary school to whom she was no longer speaking in middle school.

11

"Q.       Did you have a cast on your arm when you broke your arm?

"A.       Yes.

"Q.       Did you have a cast on your arm the first time your dad put his penis in your vagina?

"A.       No.

"Q.       Do you remember how long you had that cast on?

"A.       I think it was six months."

L.W. was clear that intercourse did not begin before her ninth birthday, but she could not remember by the time of trial how old she was when appellant began having intercourse with her.  She could not remember how long the interval was between the beginning of digital penetration and the beginning of intercourse.  The police officer and the social worker who interviewed L.W. in July 2010, attributed statements to her giving different times for the start of intercourse.

L.W. became specific about age only when the prosecutor incorporated age into her questions, e.g., "Q You said you believed you were ten still in elementary school the first time that [appellant] put his penis in your vagina?  [¶] A. Yes.  [¶] Q.  When you were ten, did he put his penis in your vagina on more than one occasion?  [¶]  A. Yes."  On redirect examination, L.W. stated her father engaged in intercourse with her "between the time [she was] 8 or 9 and the time [she was] 14" (prosecutor's words) "about once or twice a week" (L.W.'s response).

The prosecutor managed to confuse even herself with the conflicting time lines during the final argument.  She stated, "But Grandma said it all in her initial testimony.  I asked her when Mom moved out.  What did she tell you?  Third grade.  Without hesitation, third grade.  Mom got an apartment when [L.W.] was in third grade, when [L.W.] was nine.  No hesitation, third grade.  When [L.W.] was nine."[9]

_____

[9]       The prosecutor ignored later testimony from L.W.'s grandmother that she did not remember what grade L.W. was in when her mother got her own apartment.

If one uses L.W.'s mother's testimony as the basis for a time line, L.W. was indeed nine years old and in third grade in November 2005, when her mother moved out. L.W. also testified that her mother moved out at the beginning of third grade. But, as we have discussed, this time line makes L.W. a junior in high school at the time of trial. If one bases a time line on L.W.'s testimony of her grade in school during trial (senior in high school), L.W. was in fourth grade in 2005 when her mother moved out. Using elementary school grades as markers for when events occurred in this case resulted in far more confusion than certainty.

The two dates – September 21, 2006, and L.W.'s birthday in February 2007 – were critical elements in appellant's conviction for a crime carrying a sentence of 25 years to life. The jury could not convict him without proof beyond a reasonable doubt that the crime had been committed between these two exact dates, not "reasonably close" to them. Given the confused state of the evidence regarding dates, we cannot conclude beyond a reasonable doubt that the error did not contribute to the verdict.

## DISPOSITION

Appellant's conviction for a violation of section 288.7, subdivision (a), is reversed. Appellant is remanded to the trial court for resentencing on the remaining counts, as to which no appeal was taken.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


13