Filed 8/2/16  P. v. Littlefield CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C076644 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR85487) |
| v. | |
| OCEAN SUNFLOWER LITTLEFIELD, | |
| Defendant and Appellant. | |

Defendant Ocean Sunflower Littlefield appeals following his conviction for arranging and going to a meeting with a minor for lewd and lascivious purposes (Pen. Code, § 288.4, subd. (b); unless otherwise set forth, statutory references that follow are to the Penal Code), contacting a minor with intent to commit sexual offenses (§ 288.3, subd. (a)), and unlawful possession of a controlled substance, psilocybin mushrooms (Health & Saf. Code, § 11377, miscited by the parties as Health & Saf. Code, § 11594 [registration of controlled substance offenders]).

Defendant contends the trial court erred (1) by modifying a CALCRIM jury instruction that would have required the jury to find defendant intended to commit a lewd act *at* that meeting, and (2) by imposing a concurrent sentence for Count 2, execution of which should have been stayed under section 654. We conclude any instructional error was harmless, and the trial court did stay execution of sentence on Count 2 under section 654.

FACTS AND PROCEEDINGS

In 2012, defendant, age 37, placed a classified ad on Craigslist stating, "Young teacher seeking younger student." In November 2012, law enforcement investigator Eric Clay responded under the invented name and persona of Trinity Jones, a high school student who lived with her mother. They e-mailed back and forth. Clay sent a photograph of "Trinity." Defendant discussed the book "Fifty Shades of Grey," about a young woman who interviews an older man who then gives her a sexual education. Defendant asked if "Trinity" was over 18, adding, "If not it's ok, just limits a little bit what we can do in the course of your education. Are you ready for an interview?" "Trinity" said she was "almost 16" and asked about the education and what he meant by "limits." Defendant replied, "Limitations have to do with what we can do with each other in the eyes of the law. Of course I don't expect any problems in that arena, but it's something to be aware of. Because, you see, I am proposing a highly sexual education for you, and there might be a time when you want more than would be allowed . . . simply because you are . . . under 18, and I am over 21. A little research will clarify that. Think of it this way: if someone found out what we were doing together, and they were not happy about it, they could potentially get me into real trouble and you might be hopeless [sic] to stop that. A little research will clarify this point. [¶] That being, said, as for your education . . . I would like to help you learn about the pleasure and joy that is the gift of your body. Ultimately, to feel and be touched, and to touch and feel. To be

2

close and comfortable.  To be in a warm, safe environment where you can experiment with your desires and your imagination.  I would invite you to touch and explore, and when you are ready, to feel yourself against me - to feel me holding you . . . my hands caress you . . . and to bring sensual energy up into your body . . . a beginning.  A slow beginning to encourage a delicious and highly rewarding progression.”

In a later e-mail on November 23, 2012, defendant said, “I’m wondering how I can serve as your teacher and remain safe - maybe if we just keep our online conversation light for now that would be a good start.”  He told her to look up “statutory rape,” which “applies to consensual interactions -- not saying we would go there, just want you to understand my position - look it up by combining that term with ‘California law.’  Do you realize how old I am?  Did you notice that I am 37?  It’s quite a difference.  If you’re ok with that, I’m thinking we should let go of this idea and conversation online [sic].  If you can find a way to be free for lunch or maybe after school sometime, I’d be happy to meet you somewhere that we could have a nice lunch together and chat.”  He asked her to erase all her e-mails with the subject “erotic student” and start using the subject “math tutor.”

Defendant said he would provide toys, including a vibrator, show her how to use them, and would shop with her.  He said he was patient and “can give you the opportunity to explore without my own desires getting in the way.  We would start with holding each other.”  He asked her to imagine laying over his lap:  “You put my hand on your chest, and I begin tracing my hand along the lines of your body . . . from your chest down your belly, around your thighs . . . down your legs and then up your legs . . . softly brushing over your sex - up around your stomach tracing circles, caressing your smooth skin - following the contour of your torso and finally up around your breasts . . . then softly up to caress and run my fingers through your hair . . . slowly down your neck and again around your breasts - gently squeezing them a little . . . then down around your torso and around your back - then holding you closely to feel the warmth of your body

3

against mine." He later described she could lay back on her bed, and "I reach under your back - with one hand reaching low under the cheeks of your ass - squeezing a little, and lift you gently with both hands . . . then let you back down as my hands slide out from under you and slowly trace the contours of your waist and up to your breasts - pressing softly so you can feel the slight pressure of my hands teasing the senses of your delicate skin . . . down to feel the warmth between your legs . . . holding and pressing for a moment . . . massaging a little between your legs . . . ."

Defendant and "Trinity" arranged to meet during the day on November 28, 2012, at a soccer field in Red Bluff across the street from the National Guard Armory. Defendant arrived at the agreed time and was detained by law enforcement officers, who found condoms, personal lubricant, and a vibrator in his car.

Defendant gave a statement to police that, if Trinity had been real, he would have given her the vibrator and "Maybe" would have done the things he described about touching her body. He understands "this culture" has a problem with that, but he thought of himself as a "safe avenue" for her to learn about sex and to fulfill her own needs so she would make better sexual choices in life and not be hurt by "a young guy who had no self control . . . who wouldn't give her choices, or who . . . might force her, who might God knows."

In a subsequent search of defendant's home, police found psilocybin mushrooms - - a hallucinogenic controlled substance.

Defendant did not testify at trial but presented character witnesses (none of whom had read the e-mails) who said he was good with children, kind and helpful and, as one witness put it, "very much like a teacher."

The jury found defendant guilty on all three counts: (1) meeting minor for lewd purposes (§ 288.4, subd. (b)); (2) contact with minor for sexual purposes (§ 288.3, subd. (a)); and (3) possession of controlled substance (Health & Saf. Code, § 11377, subd. (a)).

4

The trial court sentenced defendant to a total term of two years and eight months, but suspended execution of sentence and placed defendant on probation for "approximately five years," to end on November 12, 2018. The sentence was two years for Count 1, meeting minor for lewd purposes, and a consecutive term of eight months for Count 3, controlled substance. The court said Count 2, contact for sexual purposes, "is 654 to Count 1" and "impose[d] a term of one year, stay[ed] that and impose[d] . . . a four-month term concurrent." The court said, "All are stayed. Obviously, the Count 2 is stayed in it[]s entirety pending the successful completion of either probation or the serving the sentence in Count 1, if [defendant] chooses that that is going to happen in his life."

We granted defendant relief from untimely filing of the appeal.

DISCUSSION

I

*CALCRIM No. 1126*

Defendant argues the trial court erred by deleting from CALCRIM No. 1126 that, in order to be found guilty of going to a meeting arranged for lewd purposes (§ 288.4), defendant must have intended to commit a lewd act "at that meeting." Defendant thinks the jury might have found he intended only to talk at that meeting. We conclude any instructional error was harmless, even under the standard of harmless beyond a reasonable doubt. (*People v. Mil* (2012) 53 Cal.4th 400, 409-410.)

Section 288.4 provides in part:

"(a)(1) Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or public or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior, shall be punished by a fine not exceeding five thousand dollars ($5,000), by

5

imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.  [¶] . . . [¶]

"(b)  Every person described in paragraph (1) of subdivision (a) who goes to the arranged meeting place at or about the arranged time, shall be punished by imprisonment in the state prison for two, three, or four years. . . ."

CALCRIM No. 1126 instructs that, to prove the defendant guilty of the crime of going to a meeting with a minor for a lewd purpose in violation of section 288.4, subdivision (b), "the People must prove that:

"1.  The defendant arranged a meeting with (a minor/[or] a person (he/she) believed to be a minor);

"2.  When the defendant did so, (he/she) was motivated by an unnatural or abnormal sexual interest in children;

"3.  *At that meeting* [italics added], the defendant intended to (expose (his/her) genitals or pubic or rectal area/[or] have the minor expose (his/her) genitals or pubic or rectal area/[or] engage in lewd or lascivious behavior;

"AND

"4.  The defendant went to the arranged meeting place at or about the arranged time.  [¶] . . . [¶]

"[Lewd and lascivious behavior includes any touching of a person with the intent to sexually arouse the perpetrator or the other person.  Lewd or lascivious behavior includes touching any part of the person's body, either on the bare skin or through the clothes the person is wearing.  [A lewd or lascivious act includes causing someone to touch his or her own body or someone else's body at the instigation of the perpetrator who has the required intent.]]"  (Orig. italics omitted.)

The prosecution asked the court to delete from the instruction the words "At that meeting" in element number three, arguing it added an element not found in the statute and noting those three words did not appear in the previous CALJIC iteration of the

6

instruction. When asked if the defense wished to be heard, defense counsel said, "I will submit it, with the argument being that is why we have CALCRIM." The court viewed the words "at that meeting" as an improper modification of the crime's elements and struck them from the instruction given to the jury.

We need not address the parties' arguments whether the trial court erred in deleting the words. Assuming for the sake of argument that the trial court erred in deleting the words "[a]t that meeting" from the jury instruction, and further assuming such error is prejudicial unless harmless beyond a reasonable doubt, it is inconceivable that defendant would have obtained a more favorable result had the words not been deleted. He argues there is substantial evidence that he did not intend to engage in lewd acts *at the meeting* at the soccer field, because some portions of his e-mails indicated he would take things slow and first wanted to "interview" her, and they planned to eat lunch and meet during daylight at a public place across from the National Guard Armory.

However, defendant also e-mailed that they would "start" with holding each other, and he brought condoms, lubricant, and a vibrator to the meeting, and admitted to police that "maybe" he would have touched "Trinity." From his own e-mails to "Trinity" about planned activity despite its illegality, and his own admissions to police about his rejection of the cultural norms that make it illegal, it is clear beyond a reasonable doubt that, had the words "[a]t that meeting" appeared in the jury instruction, the jury still would have found defendant intended at that meeting to engage in lewd and lascivious behavior, defined to include "any touching of a person with the intent to sexually arouse the perpetrator or the other person" and "touching any part of the person's body, either on the bare skin or through the clothes the person is wearing."

We conclude any instructional error was harmless beyond a reasonable doubt.

7

## II

### *Section 654*

Defendant complains the trial court improperly imposed a four-month concurrent sentence on Count 2 -- section 288.3, subdivision. (a), contacting a minor with intent to commit a lewd act -- despite acknowledging it should be stayed under section 654, which provides: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." Defendant argues execution of the concurrent term should have been stayed under section 654 because Count 2 encompasses the same conduct as Count 1 (arranging and going to a meeting for lewd purposes). The People agree. However, it appears the trial court did orally pronounce a stay of execution of sentence on Count 2, not only for the grant of probation, but also under section 654. To the extent the section 654 stay is not reflected in the written minutes or order granting probation, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Urke* (2011) 197 Cal.App.4th 766, 779.)

The court said Count 2 "is 654 to Count 1" and imposed "a term of one year, stay[ed] that and impose[d] . . . a four-month term concurrent." The court said, "All are stayed. Obviously, the Count 2 is stayed in it[]s entirety pending the successful completion of either probation or the serving the [sic] sentence in Count 1, if [defendant] chooses that that is going to happen in his life."

Thus, the trial court imposed a concurrent term but stayed *execution* of sentence on Count 2 not only due to the grant of probation but also due to section 654. This follows the accepted procedure of imposing sentence on each count and staying execution of sentence on the conviction to which section 654 applies. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) Defendant's argument fails to acknowledge the distinction between

8

staying *imposition* of sentence and imposing but staying *execution* of sentence. (*People v. Howard* (1997) 16 Cal.4th 1081, 1087-1088.) Imposing sentence but staying execution allows the trial court to comply with section 654 without risking the possibility that the defendant will escape punishment if the count carrying the greater term is reversed or vacated on appeal. (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309.) The stay of execution is contingent on the defendant's completion of sentence on the greater offense. (*Ibid.*)

Here, there is no abstract of judgment, but only the order granting probation and the court minutes. The concurrent term is not mentioned in the order granting probation but does appear in the court minutes, with the notation, "SUSP; 60 MOS F/PROB," with no mention of section 654. Nevertheless, as indicated, the oral pronouncement controls.

## DISPOSITION

The judgment is affirmed.

     HULL     , J.

We concur:


     NICHOLSON     , Acting P. J.


     RENNER     , J.