Filed 11/25/20  P. v. Castillo CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B302534 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. MA074962 |
| JOSE ROBERT CASTILLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David E. Hizami, Judge. Affirmed in part, vacated in part.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Jose Robert Castillo of seven sex offenses against three minors who were members of his extended family. The trial court sentenced him to an indeterminate sentence of 30 years to life in state prison, plus a determinate term of 68 years. On appeal, Castillo raises four arguments: (1) either count five or counts six and seven must be vacated under Penal Code section 288.5, subdivision (c)[1]; (2) counts five through ten are unsupported by substantial evidence; (3) the sentence for either count five or count seven should be stayed under section 654; and (4) the trial court prejudicially erred by not giving a unanimity instruction on counts five, six, and seven. We agree that count five must be vacated under section 288.5, and that it is unsupported by substantial evidence. In all other respects, the judgment is affirmed.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Castillo with five counts of lewd act on a child (§ 288, subd. (a); counts three, four, seven, eight, and nine), one count of continuous sexual abuse (§ 288.5, subd. (a); count five), one count of oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b); count six), one count of forcible lewd act on a child (§ 288, subd. (b)(1); count 10), and one count of dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 11). As to all counts, the information

_____

1    All undesignated statutory references are to the Penal Code.

alleged Castillo sustained a prior strike conviction. (§§ 667, subd. (d), 1170.12, subd. (b).) With respect to counts 5, 6, 10, and 11, the information alleged Castillo sustained one prior serious felony conviction. (§ 667, subd. (a)(1).)[2]

The trial court granted the prosecution's motion to dismiss counts 4 and 11. The jury found Castillo guilty on all remaining counts. Castillo admitted he sustained the prior strike and prior serious felony convictions. The trial court sentenced him to an indeterminate sentence of 30 years to life in state prison, plus a determinate sentence of 68 years, calculated as follows: (1) an upper term of 16 years on count five, doubled to 32 years; (2) four years each on counts three, seven, eight, and nine (one-third the midterm, doubled); (3) an upper term of 10 years on count 10, doubled to 20 years; and (4) a term of 15 years to life on count six, doubled to 30 years to life. The court struck the prior serious felony enhancements in the interest of justice.

Castillo timely appealed.

## FACTUAL BACKGROUND

### I. Prosecution case

### A. Count three (victim – B.L.)

At the time of trial, B.L. was 16 years old. Castillo was B.L.'s great-aunt's husband.[3] When B.L. was in junior high school, Castillo stayed with her family. B.L. lived with her

2    The information did not include a first or second count.

3    Castillo's wife N.C. was the aunt of B.L.'s mother, C.L.

mother (C.L.), her sister (M.L., the victim of counts five, six, and seven), her grandmother, and her two aunts. D.A. (the victim of counts eight, nine, and ten) was B.L.'s cousin.

When Castillo lived with B.L. in Lancaster, his behavior made B.L. feel uncomfortable. B.L. kept her distance from him. After her family moved to Arizona, B.L. returned to visit her grandmother during the summer. B.L. was sitting on the couch watching television, and Castillo sat next to her. He rested his hand on her upper knee and lower thigh. Because her mother and grandmother sometimes did the same thing, she initially thought it was okay. When Castillo moved his hand to her upper thigh, she pushed him away. She told him never to do it again or she would call the police. She walked out of the room.

B.L. was 13 when this incident occurred. She never spoke to M.L. or D.A. about the incident. The first time she spoke with her mother about it was years later, when J.F., who was married to D.A.'s mother, called C.L. and told her Castillo had molested D.A. C.L. asked B.L. and M.L. if anything had occurred between them and Castillo, and that is when B.L. and M.L. first told someone about the molestations.

### B. Counts five, six, and seven (victim – M.L.)

M.L. was born in 2006. At the time of trial, she was 13 years old and in eighth grade. Castillo was her great-uncle. M.L. lived in Lancaster with her mother, her older sister B.L., her grandmother, and her two aunts. Castillo and his wife lived with them when M.L. was about six or seven years old and in first or second grade. According to C.L., Castillo began living with them in 2012.

4

During the time Castillo lived with M.L.'s family, he touched her inappropriately more than 20 times. The incidents usually occurred in the living room as M.L. sat on Castillo's lap. No one else was in the room with them when it happened. Castillo put his hand on M.L.'s vagina. Sometimes the molestations occurred daily; other times, there was a break in time between them. Castillo called it "uncle time" and threatened M.L. that if she told anyone about it, her mother would get hurt.

M.L. also recounted a separate incident that occurred when Castillo lived with her family. She was in the bathroom naked, preparing to take a shower. Castillo came into the bathroom, shut the door, and inserted his finger in her vagina. She did not want him to do what he was doing, but she did not say anything.

Another incident occurred at Castillo's house, before Castillo lived with M.L.'s family. This was the first time Castillo molested M.L. She had gone into his room to say goodbye because she and her family were going home. Castillo took one of M.L.'s hands, put it up his shorts, and put her hand directly on his penis. M.L. did not say anything to him and did not try to get away.

M.L. never talked to anyone about the incidents until J.F. called C.L. and asked if Castillo had ever molested M.L. or B.L.

### C. Counts eight, nine, and ten (victim – D.A.)

D.A. was born in 2007. At the time of trial, she was 12 years old and in sixth grade. Castillo, his wife, and his daughter lived with D.A. and her family, including her mother M.F. and M.F.'s husband J.F., in Lancaster when D.A. was nine or ten and in the third grade. Castillo was J.F.'s stepfather. D.A. called

5

Castillo "grandpa." She testified about three different incidents when Castillo sexually molested her.

One incident occurred in the bedroom D.A. shared with her two brothers. She was in the room playing with her brothers when Castillo "came out of nowhere." It was dark outside, and the light was on in the bedroom. D.A. sat on her bed, and her brothers were on their beds on the other side of the room. She was wearing a nightgown and underwear. Castillo sat on D.A.'s bed with his back to D.A. He moved his hand behind his back, put it under D.A.'s nightgown, and touched her vagina over her underwear. Castillo moved his hand up and down. At first, D.A. thought it was a joke, but then Castillo "started being serious about it." She did not say anything to her brothers as it was happening, and she did not tell anyone about the incident afterward.

A second incident occurred in the living room. J.F. was cooking and M.F. was in her bedroom. D.A. was "play-fighting" with Castillo. He pushed her down on the ground and put both of her hands on his penis (over his clothes) while he softly punched her in the chest. She tried to get up, but Castillo pushed her down. D.A. told him to stop, but he continued with the assault. No one else was in the living room with them. D.A. yelled out, and Castillo eventually stopped.

The third and final incident occurred at a barbeque on Father's Day. D.A. was in the laundry room, which was near the kitchen, at her house. She was playing hide-and-go-seek with her brothers. With her eyes closed, D.A. counted to ten. When she opened her eyes, Castillo was standing in front of her. She tried to walk past him, but he blocked her from exiting. With his back to D.A., Castillo reached back, touched her vagina over her

clothes, and moved his fingers up and down. She tried to get away. D.A. yelled, and Castillo moved out of the laundry room. J.F. and M.F. came over to see what had happened. D.A. did not initially tell anyone about the incident. She eventually told her mother, shortly after the barbeque. After that, Castillo moved out, and he never molested D.A. again.

### D. Testimony from B.L.'s, M.L.'s, and D.A.'s parents

According to M.F., D.A.'s mother, Castillo lived with her and her family in Lancaster from 2013 to 2016. D.A.'s family had a Father's Day barbeque at their house on June 19, 2016. D.A. was nine years old. The day after the barbeque, D.A. asked M.F. why Castillo touched her vagina. D.A. told M.F. that when she and J.F. went to get food for the barbeque, Castillo pulled her into the laundry room, pushed her behind him, put his hand behind him, and grabbed her vagina. M.F. did not report the incident to the police because she was terrified of Castillo. Castillo had told her that he had "connections" and "could make things happen." D.A. told M.F. that Castillo had threatened to kill M.F.'s siblings if D.A. told anyone about the molestations. J.F. confronted Castillo about the molestations, and Castillo moved out. Sometime later, Castillo called J.F. at work and threatened to kill J.F. if he went to the police. He asked J.F. why he cared about what happened to D.A. because she was not J.F.'s biological daughter.

C.L., B.L., and M.L. moved to Arizona in 2016. Sometime that summer, after D.A. had told her parents about the molestations, J.F. called C.L. in Arizona and asked whether M.L. and B.L. had experienced similar abuse by Castillo. B.L. told C.L.

7

that Castillo tried to touch her but she told him to stop and to never do it again. M.L. started to cry and told C.L. that Castillo had been touching her. C.L. reported the incidents to the police in Arizona, but they told her she had to file a report in Lancaster, where the crimes had occurred. In May 2017, after C.L. returned to Lancaster, she reported the incidents to the police.

## II.    Defense case

Castillo did not testify or present evidence in his defense.


## DISCUSSION

## I.    Castillo's Penal Code section 288.5, subdivision (c) argument

Castillo contends Penal Code section 288.5, subdivision (c) barred him from being convicted on all of the following counts: five, six, and seven. He argues the proper remedy is a remand for the trial court to either vacate count five, or vacate counts six and seven. The Attorney General agrees there was error, but argues only counts five and six are implicated by section 288.5, subdivision (c). The Attorney General also disagrees with Castillo about the proper remedy, arguing only count five should be vacated. For the reasons discussed below, although we agree with Castillo about the scope of the error, we agree with the Attorney General that the proper remedy is to vacate count five only.

## A. Procedural background

The information charged Castillo with continuous child abuse (§ 228.5, subd. (a); count five), sexual penetration with a child (§ 288.7, subd. (b); count six), and lewd act upon a child (§ 288, subd. (a); count seven). These counts were not charged in the alternative and involved the same victim (M.L.). Count five covered the period from December 1, 2011 until December 31, 2014. Counts six and seven covered the period from March 24, 2012 until March 24, 2013.

The trial court sentenced Castillo to a 32-year determinate term on count five, 30 years to life on count six, and a four-year determinate term on count seven.

## B. The error

Section 288.5, subdivision (c) provides in pertinent part: "No other act of substantial sexual conduct, . . . with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."[4]

---

4       Section 288.5, subdivision (c) "carves out an exception to section 954's general rule permitting joinder of related charges." (*People v. Johnson* (2002) 28 Cal.4th 240, 246 (*Johnson*).)

Counts six and seven were both alleged to have occurred within the time period over which the continuous conduct in count five was alleged to have occurred. These counts were not charged in the alternative and involved the same victim. The charging document therefore did not comply with the requirement of section 288.5, subdivision (c). As a result, under the plain language of the statute, Castillo cannot stand convicted of counts five, six, and seven. The question becomes which convictions should be vacated. "[E]ither the continuous abuse conviction [count five] or the convictions on the specific offenses [counts six and seven] must be vacated." (*Johnson, supra*, 28 Cal.4th at p. 245.)

Although in *Johnson*, our Supreme Court affirmed the Court of Appeal's decision vacating the convictions on the specific counts, the court did not explain how courts are to determine which convictions to vacate under which circumstances. In *People v. Torres* (2002) 102 Cal.App.4th 1053 (*Torres*), the Court of Appeal examined the legislative intent underlying section 288.5 and concluded it was appropriate, "in deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), that we leave [the defendant] standing convicted of the alternative offenses that are most commensurate with his culpability." (*Id.* at p. 1059.) Generally, this would translate to upholding whichever conviction resulted in the greater aggregate penalty and vacating the less serious convictions. (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309 (*Rojas*).) The reason is that "[t]he intent of the Legislature in enacting section 288.5 was 'to provide additional protection for children subjected to continuing sexual abuse and certain punishment.'" (*Torres, supra,*

102 Cal.App.4th at p. 1058, quoting Stats. 1989, ch. 1402, § 1, p. 6138, emphasis omitted.) "It would be anomalous if section 288.5, adopted to prevent child molesters from evading conviction, could be used by those molesters to circumvent multiple convictions with more severe penalties and prior-strike consequences than available for a conviction under section 288.5." (*People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1177-1178.)

We agree with *Torres* and reject Castillo's argument that it was wrongly decided. The trial court sentenced Castillo to a 32-year determinate term on count five, 30 years to life on count six, and a four-year determinate term on count seven. We therefore vacate Castillo's conviction on count five. (See *Rojas*, *supra*, 237 Cal.App.4th at p. 1309; *Torres*, *supra*, 102 Cal.App.4th at pp. 1057-1061.)[5]

## II.     Castillo's substantial evidence arguments

Castillo argues the record contains insufficient evidence to sustain his convictions on counts five through ten, and that the convictions therefore violated his constitutional right to due

---

5      The Attorney General argues count seven does not fall under the statutory requirement of section 288.5, subdivision (c). The plain language of the statute belies this argument – count seven was alleged to have occurred within the time period over which count five was alleged to have occurred. Even assuming the Attorney General were correct with regard to count seven, the proper remedy would still be to vacate count five because Castillo faces a greater maximum penalty on count six (life in prison) than on count five (32 years).

process. We agree with Castillo's argument relating to count five, but reject his contentions relating to counts six through ten.[6]

## A. General legal principles

In reviewing a judgment for sufficiency of the evidence, a court must review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *People v. Staten* (2000) 24 Cal.4th 434, 460.) Substantial evidence is evidence that is "' . . . reasonable in nature, credible, and of solid value.' [Citations.]" (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) In reviewing a sufficiency claim, we "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

---

6      Although we vacate Castillo's count five conviction under section 288.5, subdivision (c), we also address his sufficiency argument on that count because the remedy for insufficient evidence, unlike the remedy for his section 288.5 argument, implicates his constitutional rights under the double jeopardy clause.

12

**B. Analysis**

**1. Count five**

Castillo first challenges the sufficiency of the evidence relating to his conviction on count five for continuous child abuse. (§ 288.5, subd. (a).) We agree that count five is unsupported by substantial evidence. Under the federal double jeopardy clause, Castillo is barred from being retried on this count. (U.S. Const., 5th Amend.; *In re Johnny G.* (1979) 25 Cal.3d 543, 546.)

Section 288.5, subdivision (a) provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who *over a period of time, not less than three months in duration, engages in three or more acts* of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years."[7] (Italics added.) Castillo argues that because victim M.L. was "not able to provide specific dates or

---

[7] A violation of section 288.5, subdivision (a) thus requires proof of the following elements: (1) the defendant lived in the same home with, or had recurring access to, the child; (2) the defendant committed three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child; (3) three or more months passed between the first and last acts; and (4) the child was under the age of 14 at the time of the acts. (CALCRIM No. 1120.)

13

her age when things happened[,]" the record contains insufficient evidence that he engaged in three or more acts of substantial sexual conduct with her over a period of time not less than three months in duration. We agree.

The evidence showed M.L. was born in 2006, that Castillo lived with her and her family from 2012 until 2014, and that Castillo touched her vagina more than 20 times during that period. Sometimes the molestations were daily; sometimes there was a break in time from one molestation to the next. Most of the molestations occurred in the living room as M.L. sat on Castillo's lap. M.L. also testified Castillo inserted his finger in her vagina as she prepared to take a shower.

Although it is possible these incidents occurred over a period that spanned three months or longer, the record is silent on this factual point. M.L. testified the incidents all happened closely in time to each other, but, perhaps because she was so young when the incidents occurred, she unfortunately could not recall when the molestations happened in relation to one another. As a result, the record does not contain sufficient evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that three acts of molestation occurred over a duration of three months or more as mandated by section 288.5, subdivision (a).

The Attorney General argues the proper remedy is not an acquittal on count five, but rather a reduction of the conviction to a violation of section 288, subdivision (a). In support of this argument, the Attorney General contends a section 288, subdivision (a) violation is not a lesser included offense of a section 288.5, subdivision (a) violation under the elements test, but that it is a lesser included offense under the accusatory

14

pleading test. Castillo responds: "Without contesting whether a violation of section 288, subd. (a), is a lesser included violation of section 288.5, a reduction of the count 5 conviction to the lesser charge is subject to section 654. Since the alleged violations of section 288, subd. (a), in counts 5 and 7 involve the same victim, the same acts, the same course of conduct, the same locations, the same period of time, section 654 would bar multiple punishments." We need not resolve this matter, however, because, as discussed above, count five must be vacated under section 288.5, subdivision (c).

### 2. Count six

Castillo next challenges the sufficiency of the evidence relating to his conviction on count six for sexual penetration with a child 10 years or younger. (§ 288.7, subd. (b).) He argues the record contains insufficient evidence that M.L. was 10 years or younger when the shower incident occurred. We disagree. The record shows M.L. was born in 2006, and Castillo lived with M.L. and her family from 2012 until 2014. The record therefore contains substantial evidence from which a jury could reasonably infer M.L. was under 10 when the sexual penetration occurred.

### 3. Count seven

Castillo contends his conviction on count seven must be reversed because the record contains insufficient evidence that M.L. was under the age of 14 when he committed a lewd act on her. (§ 288, subd. (a).) Count seven pertained to the incident when Castillo put M.L.'s hand directly on his penis. M.L. was

born in 2006, and Castillo's trial occurred in 2019, when M.L. was 13 years old. Count seven is supported by substantial evidence.

### 4. Counts eight, nine and ten

Castillo next challenges counts eight through ten. Count eight pertained to the incident when Castillo touched D.A.'s vagina in the laundry room of her house on Father's Day, June 19, 2016. Although Castillo's argument is not entirely clear, he appears to contend the record contains insufficient evidence that D.A. was under 14 years old when the incident occurred. We reject this contention. D.A. was born in 2007. The laundry room incident occurred in 2016, when D.A. was in third grade. Castillo's trial occurred in 2019, when D.A. was 12 years old. The jury could reasonably infer D.A. was under 14 years of age when Castillo committed the lewd act. For these same reasons, we reject Castillo's contention that the record contains insufficient evidence D.A. was under 14 years old when the incidents underlying count 9 (the lewd touching in the bedroom) and count 10 (the lewd act on a child using force when Castillo pinned D.A. down and put her hand on his genitals) occurred.

D.A. was 12 years old when the jury observed her testimony at trial. The jury could thus reasonably infer she was under 14 when all the charged acts occurred.

## III.   Castillo's Penal Code section 654 argument

Castillo next argues section 654 precluded the trial court from imposing sentence on both counts five and seven. The Attorney General disagrees, arguing counts five and seven

16

involved separate criminal acts. Because we are vacating Castillo's conviction on count five, we need not address this argument.

## IV. Castillo's unanimity instruction argument

Castillo next agues the trial court prejudicially erred by failing to instruct sua sponte on the unanimity requirement with respect to counts five, six, and seven. The Attorney General contends the trial court did not have a sua sponte duty to give a unanimity instruction on these counts, and that even assuming it did, the error was harmless. We agree with the Attorney General.

Criminal defendants are guaranteed the right to a unanimous jury verdict. (*People v. Jones* (1990) 51 Cal.3d 294, 321; see Cal. Const., art. I, § 16.) A unanimity instruction avoids the possibility that "'"the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." [Citation.]'" (*People v. Norman* (2007) 157 Cal.App.4th 460, 464-465.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) We review de novo challenges alleging the failure to provide a unanimity instruction. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

We begin by addressing counts six and seven. As the prosecutor explained to the jury, count six pertained to the incident when Castillo inserted his finger in M.L.'s vagina, and count seven pertained to the incident at Castillo's house when he put her hand on his penis. Because the prosecution elected to tell

17

the jury which specific acts constituted violations of counts six and seven, there was no need for the trial court to instruct the jury on the unanimity requirement in relation to those counts, as there was no danger the jury might be confused or reach a non-unanimous verdict on either count. For this same reason, we find no merit in Castillo's argument that the lack of a unanimity instruction was in any way prejudicial.[8]

---

8      We need not address Castillo's argument relating to count five because, as discussed above, we are vacating the conviction on that count.

## DISPOSITION

Castillo's conviction on count five is vacated. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.