Filed 7/3/24  P. v. Martinez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ARMANDO GOMEZ MARTINEZ,<br><br>        Defendant and Appellant. | F085615<br><br>(Super. Ct. No. PCF369096)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Armando Gomez Martinez (appellant) of 31 child sexual abuse counts for the molestation of his two young daughters, E.M. and K.M. The trial court sentenced appellant to 550 years to life plus 72 years in state prison.

On appeal, we reject appellant's claims that specific counts were not supported by substantial evidence, and that the trial court and prosecutor committed violations of the California Racial Justice Act of 2020 (CRJA). However, we agree with the parties that the trial court was unaware of its discretion to impose concurrent sentences on counts 1-3 and 25-32. We also find that the 25-year-to-life sentences on counts 24 and 28 were unauthorized. We therefore vacate appellant's sentence and remand the matter for resentencing. Otherwise, we affirm.

## BACKGROUND

### I. Familial Background.

E.M. and K.M. are sisters. E.M. is approximately five and a half years older than K.M. Appellant is their father.

Up until appellant's arrest, E.M. and K.M. lived with appellant and their mother, who were married. Due to the mother's work schedule, she was frequently away from home, leaving appellant to care for E.M. and K.M. Appellant was a strict disciplinarian and frequently punished his daughters by hitting them with a belt and other objects.

### II. Initial Disclosure of Sexual Abuse.

E.M. and K.M. first reported appellant's abuse on August 6, 2018. E.M. turned 14 years old about three weeks prior to the disclosure, and K.M. was eight years old. On that day, E.M. and K.M. went to a friend's house. When they left, K.M. said she did not want to go home, so they walked to a gas station. E.M. noticed K.M. had been acting differently for a several months. She was less talkative and more reserved than normal.

While at the gas station, E.M. asked K.M. if appellant had touched her. K.M. started crying, and the sisters shared with each other that appellant had abused them.

2.

The mother called K.M.'s cell phone, then picked up E.M. and K.M. from the gas station. While in the car, E.M. and K.M. told the mother that appellant was abusing them. After they returned home, E.M. and K.M. described appellant's abuse in more detail. The mother called appellant, who was at work, and he denied abusing E.M. and K.M. The mother told E.M. and K.M. to pack their bags, and they left their house to stay with a relative. E.M. and K.M. had no further contact with appellant.

Two days later, the mother took E.M. and K.M. to the hospital, where they underwent Sexual Assault Response Team (SART) exams. The exams revealed no physical findings, and no DNA evidence was presented at trial. E.M. and K.M. were also interviewed by law enforcement, then underwent forensic interviews conducted by the Child Abuse Response Team.

### III. Trial Testimony of E.M.

E.M. testified appellant began touching her when she was four years old. The abuse occurred inside of their home. Appellant started by touching her thighs but progressed to touching her whole body. When E.M. was five years old, appellant began touching her vagina over and under her clothing. E.M. testified appellant did this multiple times every year, and by the time she reached age 11, it happened almost every day. Appellant began putting his finger inside of her vagina when she was between nine and 10 years of age.

Appellant put his penis on the outside of E.M.'s vagina for the first time when she was seven years old. He did this more than 15 times. Appellant put his penis inside of her vagina for the first time when she was nine years old. E.M. testified appellant did this more than 20 times before she turned 11 years old, and more than five times from the ages of nine to 14. Appellant also put his penis inside of her buttocks more than 15 times. E.M. testified he did this more than five times before she turned 11 years old.

Appellant put his penis in E.M.'s mouth on more than one occasion. The first time it happened, E.M. was asleep in the room that she shared with K.M. When she woke up,

3.

appellant's penis was inside of her mouth. She pushed appellant away, and he left the room. E.M. could not remember how many other times appellant put his penis in her mouth, but testified something came out of his penis into her mouth more than once.

E.M. testified appellant kissed her on the neck more than five times. He left marks on her neck three times. Appellant also grabbed her breasts five to six times every month from the time that she was nine years old until she turned 14 years old.

The last time appellant sexually abused E.M. was the day before she disclosed the abuse to her mother. The incident occurred when E.M. was 14 years old. E.M. was at home with appellant and K.M. Appellant told E.M. to come into his room. After she entered, appellant told her, "Take off your clothes or I'm going to hit you." She complied because she was afraid. Once she took off her clothes, appellant touched her breasts and vagina with his hands, then got on top of her and put his penis inside of her vagina. Afterward, he grabbed his shirt and wrapped it around his penis. According to E.M., appellant frequently used a shirt to "clean[] off what came out of him."

Appellant would get angry when E.M. refused to let him touch her, and sometimes told E.M. he would hit her if she did not cooperate with him. On six occasions he struck her with a belt because she did not comply with his sexual demands. Appellant also told E.M. she could not tell anyone about the abuse, and if she did, her mother would leave her.

E.M. testified appellant rarely wore a condom when he abused her. When E.M.'s period was late, he would make her take a pregnancy test. On one occasion, while E.M. was waiting for the results of the pregnancy test, appellant hit her in the stomach, and told her no one could find out what was happening.

## IV. Trial Testimony and Forensic Interview of K.M.

K.M. testified at trial, and a recording of her forensic interview was admitted into evidence and played for the jury pursuant to Evidence Code section 1360, subdivision (a).

4.

K.M. stated appellant began abusing her when she was seven years old. When she was seven and eight years old, appellant put his penis inside of her vagina more than five times.

K.M. described one incident where she fell asleep on the sofa, and when she awoke, appellant was on top of her. She felt pain in her vagina. Appellant told her to be quiet, then got off her and pulled up his pants. Another time, when K.M. was seven years old, she woke up to appellant's penis touching her mouth.

Appellant told K.M. that if she told anyone about the abuse, she would get in trouble and he would hit her.

## V. Appellant's Arrest and Interview.

Appellant was arrested on August 8, 2018, the same day E.M. and K.M. first reported appellant's abuse to law enforcement. Appellant was transported to the police station and interviewed by detectives. The interview was conducted in Spanish, and was audio and video recorded. A recording of the interview with English subtitles was played in court. The jury was also provided with a transcript of the interview translated into English.

Appellant initially denied abusing E.M. and K.M. He claimed E.M. was lying because she was angry at him for disciplining her, and that K.M. was lying because E.M. influenced her to do so.

Later in the interview, a detective informed appellant that E.M. reported he last abused her three days ago. The detective employed a ruse and falsely told appellant that semen was found in E.M. during the SART exam. Appellant then admitted that he put his penis inside of E.M.'s vagina three days before the interview. He stated they were on the floor in his room, and that he ejaculated on his shirt.

Appellant later admitted he put his penis inside of E.M.'s vagina at least three times. According to appellant, E.M. was 13 years old the first time it happened.

5.

Appellant denied using force or threats, or ever engaging in oral copulation with E.M. He also denied ever abusing K.M.

## VI.    Charges, Verdict, and Sentence.

The Tulare County District Attorney's Office filed an amended information alleging appellant committed 32 child sexual abuse offenses.  As to E.M., the People charged appellant with three counts of sexual intercourse with a child 10 years of age or younger (Pen. Code, § 288.7,[1] subd. (a); counts 1-3), one count of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b); count 4), 19 counts of committing a lewd act upon a child under 14 years of age by force or fear (§ 288, subd. (b)(1); counts 5-23); and one count of forcible rape (§§ 261, subd. (a)(2); count 24).  As to K.M., the People charged appellant with three counts of sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a); counts 25-27), one count of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b); count 28), and four counts of committing a lewd act upon a child under 14 years of age (§ 288, subd. (a); counts 29-32).

The jury found appellant guilty on all counts except count 4.  The jury acquitted appellant on count 4 but found appellant guilty of the lesser included offenses of misdemeanor assault (§ 240) and misdemeanor battery (§ 242).  As to counts 5-7, 11-14, 21-24, and 29-32, the jury found true the allegation that appellant "has been convicted in the present case … of committing an [enumerated sex offense] against more than one victim."  (§ 667.61, subds. (e)(4), (j)(2).)  As to counts 5-14 and 29-32, the jury found true the allegation that appellant had "substantial sexual conduct" with a victim under 14 years of age.  (§ 1203.066, subd. (a)(8).)

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

6.

The trial court sentenced appellant to 22 consecutive terms of 25 years to life, plus a consecutive term of 8 years on each of the remaining counts, for a total of 550 years to life plus 72 years in state prison.

## DISCUSSION

### I.  Appellant's Convictions were Supported by Substantial Evidence.

Appellant contends the evidence at trial was insufficient to sustain convictions on counts 5-11 and 21-23.  Each of these counts pertained to E.M., and were violations of section 288, subdivision (b)(1), which prohibits the commission of a forcible lewd act upon a child under 14 years of age.

Appellant claims E.M.'s testimony was too general or vague to establish that the offenses occurred within the window of time alleged in the information.  He also argues that the jury's reliance on E.M.'s "generic" testimony violated his right to due process. We conclude the convictions were supported by substantial evidence, and we reject appellant's due process claim.

### A.  Standard of review.

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt."  (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)  We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' "  (*People v. Tripp, supra*, at p. 955, italics omitted.)

**B.    Generic testimony of child sexual abuse may be sufficient to sustain a conviction.**

In *People v. Jones*, our Supreme Court held that convictions for lewd acts under section 288 may properly be based on "nonspecific" or "generic" testimony from the victim, i.e., "testimony describing a series of essentially indistinguishable acts of molestation." (*People v. Jones* (1990) 51 Cal.3d 294, 299–300, 313–314 (*Jones*).) *Jones* observed that child sexual assault cases often involve a young victim and a "so-called 'resident child molester,' " who "either lives with his victim or has continuous access to him or her." (*Id.* at p. 299.) In such cases, the accuser may be able to describe "repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults." (*Ibid*.) *Jones* reasoned that "even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*Id.* at p. 314.) "To hold that such testimony, however credible and substantial, is inadequate to support molestation charges would anomalously favor the offender who subjects his victim to repeated or continuous assaults." (*Id.* at p. 300.)

To support a conviction, generic testimony must, at a minimum, describe: (1) "the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)"; (2) "the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment"; and (3) "the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Jones*, *supra*, 51 Cal.3d at p. 316, italics omitted.)

### C. Substantial evidence supported appellant's convictions.

#### 1. Counts 5, 6, and 7.

Appellant challenges the sufficiency of the evidence of counts 5, 6, and 7. The information alleged these counts were based on the lewd act of "penis to vagina," and occurred "[o]n our about and between July 18, 2015 and July 17, 2018." Based on these dates, the offenses were alleged to have occurred when E.M. was 11, 12, and 13 years old.

Appellant was also charged in counts 1, 2, and 3 with sexual intercourse with a child 10 years of age or younger, alleged to have occurred when E.M. was ages four through 10. (§ 288.7, subd. (a).) Appellant does not challenge the sufficiency of the evidence of these counts.

Based on this record, we conclude substantial evidence supported appellant's convictions on counts 5, 6, and 7. E.M.'s testimony alone that appellant put his penis inside of her vagina more than 20 times before she turned 11 years old was sufficient to sustain convictions for both counts 1-3 (sexual intercourse with a child 10 years of age or younger) and counts 5-7 (forcible lewd act upon a child under the age of 14). In addition, E.M. testified appellant put his penis inside of her vagina more than five times from ages nine through 14, and that he put his penis on the outside of her vagina more than 15 times beginning when she was seven years old.

We recognize appellant had continued access to E.M. for approximately three weeks after she turned 14 years old, and any act of sexual abuse that occurred during this period would not qualify as a forcible lewd act upon a child under the age of 14. But given that E.M. testified appellant abused her frequently and repeatedly over several years, the only reasonable inference is that many of these acts occurred before E.M. turned 14 years old. In other words, it would be unreasonable to conclude that all of these acts occurred during the three-week period after she turned 14 years old.

9.

Appellant argues the evidence supporting counts 5, 6, and 7 was insufficient because it was too vague to establish the offenses occurred within the time frame alleged, i.e., that the offenses occurred when E.M. was ages 11 through 13. We are not persuaded. E.M. testified appellant's penis touched or went inside her vagina more than 35 times. This conduct began when E.M. was seven years old, and it continued until appellant lost contact with E.M. approximately three weeks after she turned 14 years old. Considering the number of acts and the frequency of the abuse, the record clearly supports the conclusion appellant committed three or more forcible lewd acts when E.M. was 11, 12, and 13 years old.

In any event, the prosecution was not required to prove the charged offenses were committed on the alleged dates, but only that they were committed "reasonably close" to those dates. (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1304; see § 955; *People v. Jennings* (1991) 53 Cal.3d 334, 358; CALCRIM No. 207.) The jury was instructed on this principle in CALCRIM No. 207, and appellant does not challenge the validity of this instruction. (See *People v. Rojas*, *supra*, 237 Cal.App.4th at p. 1304 [CALCRIM No. 207 correctly states the law].) The exact date of an offense may be relevant if it pertains to an element of an offense, such as the age of the victim at the time the offense occurred. (See § 955.) However, as we explained above, there was ample evidence at trial that appellant put his penis on or inside of E.M.'s vagina numerous times before she reached the age of 14. Accordingly, we conclude counts 5, 6, and 7 were supported by substantial evidence.

### 2. Counts 8, 9, and 10.

The information alleged that counts 8, 9, and 10 were based on the lewd act of "penis to buttocks." The offenses were alleged to have occurred when E.M. was 11, 12, and 13 years old.

E.M. testified appellant put his penis inside of her buttocks more than 15 times. It happened more than five times before she turned 11 years old, and continued until she

was 14 years old. Thus, there was ample evidence to support the jury's finding that appellant put his penis inside of E.M.'s buttocks at least three times before she reached the age of 14.

For the reasons explained above, we reject appellant's contention that E.M.'s testimony was too vague to establish the offenses occurred within the alleged time frame. The prosecution is not required to prove the offenses occurred exactly within the date range alleged in the accusatory pleading. (*People v. Rojas*, *supra*, 237 Cal.App.4th at p. 1304.) Even so, E.M.'s testimony supported the conclusion that at least three of the acts occurred when she was ages 11, 12, and 13. We therefore conclude appellant's convictions on counts 8, 9, and 10 were supported by substantial evidence.

### 3.    Count 11.

The information alleged that count 11 was based on the lewd act of "E.M.'s mouth to [appellant's] penis." The offense was alleged to have occurred when E.M. was 11, 12, or 13 years old. Appellant was also charged in count 4 with oral copulation of a child 10 years of age or younger. (§ 288.7, subd. (b).) The jury found appellant not guilty on count 4 but convicted him of the lesser included offenses of assault (§ 240) and battery (§ 242).

E.M. testified appellant put his penis in her mouth more than once. She did not specify how old she was when the acts occurred. She could not remember how many times appellant's penis touched her mouth but recalled something coming out of appellant's penis into her mouth multiple times. She described one incident in detail, testifying that appellant entered her room while she was asleep and put his penis in her mouth.

Based on this testimony, the frequency of appellant's abuse, and the fact that E.M. only had contact with appellant for a few weeks after she turned 14 years old, the jury could have reasonably concluded appellant's penis touched or went inside of E.M.'s mouth at least one time before she reached the age of 14. We also observe that the jury

11.

acquitted appellant on count 4, suggesting it found insufficient evidence that an act of oral copulation occurred when she was 10 years of age or younger. Thus, the jury must have concluded the oral copulation occurred when E.M. was 11, 12, or 13 years old. Regardless, as we have explained, the prosecution must only show that the alleged offense occurred reasonably close to the time frame alleged. (*People v. Rojas*, *supra*, 237 Cal.App.4th at p. 1304.) For these reasons, we conclude count 11 was supported by substantial evidence.

### 4. Counts 21, 22, and 23.

The information alleged that counts 21, 22, and 23 were based on the lewd act of "kissing neck." The offenses were alleged to have occurred when E.M. was seven years old through 13 years old.

E.M. testified appellant kissed her on the neck more than five times, and left marks on her neck three times. E.M. did not specify how old she was when the acts occurred.

Considering the entirety of E.M.'s testimony, including the number of acts of abuse, the frequency of the abuse, and that appellant lost access to E.M. approximately three weeks after she turned 14 years old, the evidence amply supported the jury's finding that appellant kissed her neck at least three times before she reached the age of 14. Accordingly, counts 21, 22, and 23 were supported by substantial evidence.

### D. The jury's reliance on E.M.'s generic testimony did not violate due process.

In addition to his substantial evidence claims, appellant contends his convictions based on E.M.'s generic testimony violated his due process right to prepare and present a defense. Our Supreme Court rejected this argument in *Jones*. First, the court held that the prosecution of child molestation charges based on generic testimony does not infringe on the right to fair notice of the charges, "given the availability of the preliminary hearing, demurrer and pretrial discovery procedures." (*Jones*, *supra*, 51 Cal.3d at

12.

p. 318.)  Next, the court held that generic testimony does not unconstitutionally limit the ability of the accused to present a defense.  (*Id.* at pp. 319–320.)  With respect to an alibi defense, the court observed it is rarely available in resident child molester cases where the defendant "has lived with the victim for an extensive, uninterrupted period and therefore had continuous access to the victim."  (*Id.* at p. 319.)  However, even where a defendant raises an alibi defense in this type of case, "there is no reason why the jury would be less inclined to credit the defense as applied to appropriate counts, merely because the victim's generic testimony has implicated the defendant in additional counts or offenses not challenged by the alibi.  Indeed, the fact that the defendant has established an alibi covering some of the time periods alleged in the information could significantly undermine the victim's testimony as to the remaining counts."  (*Ibid*.)  The court also observed a defendant has several other means of defending against this type of testimony, including cross-examination of the alleged victims and witnesses, presenting expert witnesses, character evidence, and evidence of a victim's prior fabrications, and testifying in one's own defense.  (*Id.* at p. 320.)

Appellant relies on *People v. Barney*, which held the trial court erred in instructing the jury with CALJIC No. 4.71 that the prosecution need not prove the crime charged was committed on the precise date alleged.  (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.)  In *Barney*, the defendant was convicted, inter alia, of lewd act upon a child under the age of 14 (§ 288, subd. (a)).  (*People v. Barney*, *supra*, 143 Cal.App.3d at p. 492.)  The offense was alleged to have been committed on a specific date.  (*Id.* at p. 498.)  The defendant presented a defense of lack of opportunity, which the court characterized as analogous to "a classic alibi defense."  (*Ibid.*)  In holding the trial court erred in giving the instruction, the court reasoned "the exact time of commission [was] critically relevant to the maintenance of the defense.…  The defendant is entitled as a matter of due process to have the time of commission of the offense fixed in order to

demonstrate he was elsewhere or otherwise disenabled from its commission." (*Id.* at p. 497.)

Here, the trial court instructed the jury with CALCRIM No. 207, which is substantially similar to CALJIC No. 4.71. Appellant does not contend on appeal that the trial court erred in giving this instruction. In any event, unlike in *People v. Barney*, there was no evidence of an alibi, lack of opportunity, or any other analogous defense. Accordingly, *People v. Barney* is inapplicable here, and this claim lacks merit.

## II. The Trial Court's Initial Ruling Excluding Appellant's Recorded Statement and the Prosecutor's Related Arguments did not Violate the CRJA.

During trial, appellant sought to play his two-hour video-recorded interview, which was conducted in Spanish. The trial court initially refused to allow appellant to play the statement in its entirety under Evidence Code section 352, based on concerns that the jury would not be able to follow a two-hour foreign language video with a lengthy written transcript. However, after defense counsel provided a copy of the recorded interview with English subtitles, the trial court reversed its ruling and allowed the video to be played.

Despite this, defense counsel contends the trial court violated the CRJA by initially refusing to allow appellant to play the entire Spanish language interview, and that the prosecutor violated the CRJA by objecting to appellant's request. We disagree. Appellant abandoned his CRJA claim after the trial court reversed its ruling, and therefore the claim is forfeited on appeal. We also conclude the claim fails on the merits, because nothing in the record suggests the trial court or prosecutor exhibited racial bias or animus.

### A. Background.

The video recording of appellant's interview is approximately two hours long. The People submitted a 52-page written transcript of the interview translated into

English. The interviewing detective, who is fluent in Spanish, testified the transcript was an accurate translation of the recorded interview.

While discussing jury instructions during a break in trial, the trial court asked the prosecutor whether she intended to play the video recording of appellant's interview in her case-in-chief. The prosecutor responded she intended to introduce the English transcript but would not play the recorded interview. Defense counsel requested that the entire interview be admitted under the rule of completeness (Evid. Code, § 356). The court did not rule on defense counsel's request, but tentatively indicated it would give a jury instruction on transcripts of a recording in a foreign language.

During direct examination of the interviewing detective, the prosecutor began asking the detective questions about what was said during the interview and directed him to read portions of the English transcript. Defense counsel objected to the detective reading from the transcript, because it had not been entered into evidence. Outside the presence of the jury, the trial court suggested the parties agree to the English transcript being read aloud to the jury in its entirety. Defense counsel objected. The court then overruled defense counsel's objection and allowed the prosecutor to ask the detective to read portions of the English transcript. When direct examination resumed, defense counsel continued to object to the detective reading from the transcript.

After the next break in the proceedings, the court stated it had reconsidered its previous ruling. It ruled the English transcript was hearsay, and that the detective would have to relate appellant's statements in the interview from memory. However, as to the recorded interview, the court stated its tentative ruling was to preclude defense counsel from playing it in its entirety under Evidence Code section 352, reasoning: "There is no way to effectively follow a Spanish-speaking video with an English-speaking transcript."

Defense counsel objected, contending exclusion of the video recording would prevent the jury from observing appellant's demeanor or tone during the interview. He argued the rule of completeness necessitated admission of the video recording, because it

15.

is necessary to understand and evaluate appellant's statements. He asserted exclusion would violate equal protection and due process by placing appellant, a non-English speaking defendant, in a different position than an English speaking defendant. He also argued exclusion would violate the CRJA, because appellant was being disadvantaged due to his national origin.

The prosecutor responded that defense counsel had not offered "any valid, legally admissible reason as to why a two-hour interview in Spanish should be played." She argued the rule of completeness was inapplicable because defense counsel would still be allowed to address the entire interview through cross-examination of the detective. While the prosecutor conceded the video recording had some relevance, she contended it would require an undue consumption of time and would be misleading and confusing because the jury would not be able to track what was being said.

The trial court adopted its tentative ruling that it would not allow the recorded interview to be played in its entirety, stating:

> "First, I find it unreasonable, confusing, and subject to undue consumption of time to play a Spanish-speaking video to the jury. It goes without saying this is an English-speaking courtroom with English-speaking officials and English-speaking jurors. It is not reasonable to assume that there is any ability of a non-Spanish speaker to follow an English transcript of a Spanish video.

> "The Court is making its ruling regarding these findings and ultimate decision, not based on the fact that defendant is a non-English speaker. It is again, based on the fact that this court is English-speaking and the Spanish-speaking [recording] is of little value under Evidence Code Section 352.

> "The prejudicial effect far outweighs the probative value. This is especially in light of the factor there's been nothing definitively stated by the defendant that is of relevance to making a determination concerning any issues involving that transcript.

> "Yes, I understand that the transcript and the testimony perhaps doesn't display the defendant's demeanor, but neither would necessarily an English transcript and a Spanish video.

16.

"I am not precluding the defendant from selecting portions of the transcript that would not take—or portions of the video that would not take an undue consumption of time and playing it. That is acceptable to the Court if there is a legitimate, relevant reason for the playing of a portion to show demeanor. I have not heard such an offer of proof.

"I also note that defendant could have perhaps[] taken the Spanish-speaking video to an official transcriber, and the words placed on the video in English such as we often see [in a movie]. Defendant could have done that. Defendant hasn't done that. The People haven't done that.

"Under Evidence Code Section 352, I deny either side's request to play the entire Spanish-speaking video with an English-speaking transcript. That's the limit of my ruling on that.

"Again, not precluding [the] defense or prosecution playing a portion if there is a legitimate reason."

After issuing its ruling, the court agreed it would be "inclined to reconsider its ruling" if the defense was able to provide a copy of the video recording with English subtitles. When the trial resumed three days later, defense counsel submitted a subtitled version of the video, and the parties agreed to play it in its entirety. The detective resumed his testimony, and the subtitled video was admitted into evidence and played for the jury. Appellant did not renew his objection under the CRJA.

**B.      Legal Background—The CRJA.**

Effective January 1, 2021, the CRJA (Stats. 2020, ch. 317, § 3.5) added section 745 to the Penal Code, which states, "The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) As pertinent here, a violation of the CRJA occurs if "[t]he judge [or] an attorney in the case" exhibits racial "bias or animus towards the defendant," (§ 745, subd. (a)(1)), or uses "racially discriminatory language about the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(2).) The CRJA does not define the terms "bias" or "animus," but specifies that the moving party is not required to prove "intentional discrimination." (§ 745, subd. (c)(2).) However, the legislative findings to

17.

the CRJA include a non-exhaustive list of potentially violative statements or conduct, including "racially incendiary or racially coded language, images, and racial stereotypes," and suggests that people of a certain race are "predisposed" to criminal conduct. (Stats. 2020, ch. 317, § 2, subds. (d), (e).) The moving party has the burden of proving a violation of the CRJA by a preponderance of the evidence. (§ 745, subd. (c)(2).)

### C. The claim is forfeited.

A CRJA claim may be raised on direct appeal from conviction or sentence if the claim is based on the trial record. (§ 745, subd. (b).) However, such claims are still subject to appellate rules of forfeiture. (*People v. Lashon* (2024) 98 Cal.App.5th 804, 810–811 (*Lashon*).) In *Lashon,* the court observed the Legislature "did not include any language indicating a section 745 claim could be presented on direct appeal *for the first time*." (*Lashon*, *supra*, 98 Cal.App.5th at p. 812.) *Lashon* also noted the Legislature included a waiver provision, providing that a CRJA motion may be deemed waived if not "made as soon as practicable upon the defendant learning of the alleged violation." (§ 745, subd. (c); *Lashon*, *supra*, 98 Cal.App.5th at p. 813.) Based on this statutory language, and its examination of section 745's legislative history, *Lashon* concluded that a CRJA claim on direct appeal "is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court." (*Lashon*, *supra*, 98 Cal.App.5th at pp. 812–815.) "It makes little sense for the Legislature to prescribe a comprehensive procedure for making and adjudicating a section 745 motion at the trial level (including a specific waiver provision for untimely motions), only to allow defendants who could have but did not use that procedure (thereby preserving their claim for review) to bypass that procedure and pursue a section 745 claim for the first time on direct appeal." (*Lashon*, *supra*, 98 Cal.App.5th at p. 813.)

Here, appellant objected to the trial court's initial refusal to allow him to play the recorded interview on several grounds, including equal protection, due process, and violation of the CRJA. His CRJA objection was based on his argument that excluding the

recorded interview adversely impacted him due to his national origin. But after the trial court reversed its initial ruling and allowed the recorded interview to be played with English subtitles, appellant did not reassert his objections. Instead, he accepted the favorable ruling by providing a copy of the recorded interview with English subtitles and agreeing it may be played for the jury. Based on these actions, "we may presume [appellant] intended to withdraw the" CRJA motion. (*People v. Cunningham* (2001) 25 Cal.4th 926, 984.) Even if this was not his intention, "his failure to press for a ruling waives the issue on appeal." (*Ibid.*; see *People v. Rowland* (1992) 4 Cal.4th 238, 259.)

Appellant relies on *Catchpole v. Brannon*, which held the plaintiff in a sexual harassment case did not forfeit her claim on appeal that the trial court's exhibition of gender bias violated due process by failing to raise it below. (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 244, disapproved on another ground by *People v. Freeman* (2010) 47 Cal.4th 993, 1006–1007, fn. 4.) The court reasoned forfeiture was inapplicable because the claim involved the public interest and due administration of justice. (*Ibid.*) It also opined that "[f]ew more daunting responsibilities could be imposed on counsel than the duty to confront a judge with his or her alleged gender bias in presiding at trial." (*Ibid*.)

This case does not assist appellant. A CRJA claim that the trial judge has exhibited racial bias or animus is procedurally distinct from a due process claim of judicial bias. As *Lashon* observed, section 745 requires that any claim in the trial court be raised "as soon as practicable," (§ 745, subd. (c)), and nothing in section 745 authorizes such a claim to be raised for the first time on direct appeal. (*Lashon*, *supra*, 98 Cal.App.5th at p. 812.) To conclude that general principles of appellate forfeiture do not apply to CRJA claims would require us to read omitted language into section 745. We cannot contravene this well settled canon of statutory interpretation. (See *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894; *Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 748.)

We recognize respondent concedes appellant preserved the instant claim on appeal by objecting below.  But we are not bound by this concession.  (See *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021; *People v. Kimble* (2024) 99 Cal.App.5th 746, 749, review granted Apr. 24, 2024, S284259.)  The record is clear that appellant objected to an adverse evidentiary ruling based on the CRJA, but then abandoned the objection after the trial court reversed itself and issued a favorable ruling.  The claim is forfeited.

**D.      Appellant fails to establish a violation of the CRJA.**

Even if we assumed the CRJA claim was not forfeited, we would still conclude it lacks merit.

Appellant contends the trial court exhibited bias against him by initially ruling he could not play the entire recorded interview under Evidence Code section 352.  He argues the trial court's ruling was based on the fact that it was in Spanish, and as a result, it excluded relevant evidence of appellant's demeanor and tone solely because appellant is Spanish speaking.

This claim is not supported by the record.  In making its initial ruling, the trial court expressed legitimate concerns regarding the logistics of presenting a two-hour statement in a foreign language to the jury.  All proceedings in California courts must be conducted "in the English language."  (Code Civ. Proc., § 185, subd. (a).)  When a foreign language recording is played in court, jurors must only rely on the English language transcript provided by the court.  (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 304; see CALCRIM No. 121.)  Even with the assistance of a written translation, the trial court reasonably concluded it would be nearly impossible for jurors to match the foreign language video to a lengthy English transcript, especially over the course of two hours.  While the video was relevant to show appellant's demeanor and tone during the interview, playing the video would not be helpful if the jurors could not track what was being said.  For this reason, the court exercised its broad discretion under Evidence Code

section 352 to "control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice." (*People v. Hall* (1986) 41 Cal.3d 826, 834.)

To remedy these logistical difficulties, the trial court offered two reasonable solutions that would allow appellant to introduce part or all of the recorded interview. Specifically, the trial court suggested appellant could play brief portions of the recorded interview, or that appellant could submit a copy of the interview with English subtitles. Appellant selected the latter solution, and the court allowed the recorded interview to be played in its entirety.

Based on our review of the record, nothing suggests the trial court acted with express or implicit bias or animus toward appellant. The trial court acted reasonably to address a logistically complicated evidentiary issue, and ultimately fashioned a result that allowed appellant's Spanish language statement to be played for the jury.

We also reject appellant's assertion that the prosecutor acted with bias or animus toward appellant. The prosecutor initially objected to the entire recorded interview being played, and argued the rule of completeness did not compel admission because the jury could otherwise learn of the contents of the entire statement without the video. The prosecutor also contended that playing the entire recorded interview would confuse and mislead the jury and result in an undue consumption of time, and thus should be prohibited under Evidence Code section 352. These arguments were framed by rules of evidence and mirrored the trial court's concerns regarding the logistics of playing a lengthy foreign language interview in front of the jury. On this record, we deduce no express or implied bias or animus by the prosecutor.

To conclude, appellant fails to meet the burden of establishing the trial record demonstrates racial bias or animus by the trial court or prosecutor, even under the applicable preponderance of the evidence standard. The trial court's initial ruling and the prosecutor's arguments were based on foundational principles of the rules of evidence. Contrary to appellant's claim, there is no basis to conclude any party was expressly or

21.

implicitly motivated by bias or animus against appellant because of the language that he speaks. We therefore reject appellant's assertion that the trial court and prosecutor violated the CRJA.

**III.    The Record Indicates the Trial Court was Unaware of its Discretion to Impose Concurrent Sentences on Counts 1-3 and 25-32. We Remand the Matter for Resentencing.**

At sentencing, the trial court imposed consecutive sentences as to all counts, stating it was obligated to do so pursuant to section 667.6, subdivision (d)(1). Appellant contends the trial court was unaware of its discretion to impose concurrent sentences on counts 1-3 and 25-32, because section 667.6, subdivision (d)(1) does not apply to those counts. Respondent concedes, and we agree, that the record indicates the trial court was unaware of its discretion in this regard. Because the record does not " 'clearly indicate' " that the trial court would still have imposed consecutive sentences had it been aware of the full scope of its discretion, we vacate appellant's sentence and remand the matter for resentencing. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

**A.    Background.**

Appellant was convicted in counts 1-3 and 25-27 of violations of section 288.7, subdivision (a), in count 28 of a violation of section 288.7, subdivision (b), and in counts 29-32 of violations of section 288, subdivision (a). As to counts 29-32, the jury found true the multiple victim allegation pursuant to section 667.61, subdivisions (e)(4) and (j)(2).

At appellant's sentencing hearing, defense counsel contended the trial court had discretion to impose concurrent sentences on some of the life terms, and requested that it do so. The trial court responded: "Under Penal Code [s]ection 667.6(d)(1), the Court is required to impose full separate and consecutive terms for separate victims or the same victim on separate [occasions]. The Court is quite clear that section applies." Later, prior to imposing sentence, the court stated: "As to imposition of concurrent or consecutive

22.

sentences, again, the Court chooses to impose full, separate consecutive terms pursuant to Penal Code section 667.6(d)(1) …. I specifically find after listening to the evidence and hearing the multiple counts occurring, that each count is, indeed, for a separate act alleged in the count and not duplicative of any other act or during the same occasion as any other act in any of the other counts." On counts 1-3 and 25-32, the court sentenced appellant to consecutive terms of 25 years to life.

### B.     Standard of review.

"It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford* (1976) 17 Cal.3d 8, 20; see § 669, subd. (a).) Accordingly, we review a trial court's decision whether to impose concurrent or consecutive sentences under an abuse of discretion standard. (*People v. Bradford*, at p. 20.) An abuse of discretion will only be found in limited circumstances, such as where a trial court is unaware of its discretion, considers impermissible factors in the exercise of that discretion, or renders a decision "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

### C.     An abuse of discretion occurred because the trial court was unaware of its discretion to impose concurrent sentences.

Section 667.6, subdivision (d)(1), mandates full-term consecutive sentences for certain sex offenses "if the crimes involve separate victims or involve the same victim on separate occasions." However, this requirement only applies to a violation of offenses "specified in [section 667.6,] subdivision (e)." (§ 667.6, subd. (d)(1).) Section 288.7 and section 288, subdivision (a), are not listed in section 667.6, subdivision (e). Thus, the trial court was not obligated to impose consecutive sentences on counts 1-3 and 25-32 pursuant to section 667.6 subdivision (d)(1), because it is not applicable to those offenses.

The parties also agree that the "One Strike" law did not obligate the trial court to impose consecutive sentences on counts 1-3 and 25-32. Codified in section 667.61, the

One Strike law "is an alternative sentencing scheme [that] applies only to certain felony sex offenses." (*People v. Anderson* (2009) 47 Cal.4th 92, 102.) Subdivision (i) of section 667.61 provides the court must impose "a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." Here, section 667.61, subdivision (i) does not apply to counts 1-3 and 25-28 because violations of section 288.7 do not fall within the One Strike law. (See § 667.61, subd. (c).) Additionally, while violations of section 288, subdivision (a) fall within the One Strike law, section 667.61, subdivision (i) expressly excludes such convictions from its mandatory consecutive sentencing requirement. (See §§ 667.61, subds. (c), (i).) Therefore, section 667.61, subdivision (i) is not applicable to counts 29-32.

The trial court's erroneous statement that it was required to impose consecutive sentences on all counts indicates that it was unaware of its sentencing discretion. "In such circumstances … the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) We agree with the parties that there is no clear indication in the record that the trial court would still have imposed consecutive sentences even if it had been aware of its discretion. Accordingly, we vacate appellant's sentence and remand the matter for the trial court to resentence appellant and exercise its discretion whether to impose either consecutive or concurrent sentences on counts 1-3 and 25-32. We express no opinion how the trial court should exercise its discretion at resentencing.

**IV.     The Trial Court's Imposition of a 25-year-to-life Sentence on Count 24 Pursuant to Section 667.61, Subdivision (j)(2) was Unauthorized.  Imposition of the Same Sentence Pursuant to Section 667.61, Subdivision (m), would Violate Appellant's Due Process Right to Fair Notice.**

Appellant contends his 25-year-to-life sentence on count 24 was unauthorized, because section 667.61, subdivision (j)(2) only applies to offenses committed on victims

under the age of 14, but the jury found E.M. was 14 years old at the time of the offense. Respondent agrees, but argues appellant is still subject to a 25-year-to-life sentence under section 667.61, subdivision (m), a different provision of the One Strike law that applies to offenses committed against victims 14 years of age or older. Appellant counters this would violate his due process right to fair notice because the information did not allege this subdivision.

We agree with appellant. It is undisputed that E.M. was 14 years of age at the time appellant committed the offense alleged in count 24. Accordingly, section 667.61, subdivision (j)(2), was inapplicable. We also conclude that imposing a 25-year-to-life sentence under a different, unpled provision of the One Strike law would violate due process. We strike appellant's sentence on count 24, and remand for resentencing.

### A.    Background.

In count 24 of the amended information, the People alleged that "On or about August 5, 2018," appellant committed "the crime of FORCIBLE RAPE CHILD VICTIM OVER 14 YEARS, in violation of PENAL CODE SECTION 261(a)(2)." The description of the substantive charge also included the following statement: "It is further alleged that the victim was a child, under 14 years of age." Immediately below the charge is the following heading: "SPEC ALLEGATION – SEX CRIMES – AGGRAVATED CIRCUMSTANCES." Below this heading is the following language: "It is further alleged, as to the above counts within the meaning of Penal Code sections 667.61(j)(2) and (e), that the victim in the above offense was a child under 14 years of age and that the following circumstance applies MULTIPLE VICTIMS = set forth the circumstance in subdivision (e) which is applicable."

The verdict form stated the jury found appellant "Guilty as charged in Count 24 of the Information of FORCIBLE RAPE CHILD VICTIM OVER 14 YEARS, in violation of Penal Code section 261(a)(2), against E.M." It also stated the jury found "True

25.

pursuant to Penal Code section 667.61(j)(2) that the above offense was committed with the following circumstances: MULTIPLE VICTIMS."

At sentencing, the probation report recommended the trial court sentence appellant on count 24 to 25 years to life "pursuant to [section] 667.61(j)(2)." The trial court adopted that recommendation, stating it found the section 667.61, subdivision (j)(2) special circumstance applicable to several counts, including count 24. It then sentenced appellant on count 24 to an indeterminate term of 25 years to life.

**B.      Applicable provisions of the One Strike law.**

The One Strike law "mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime (§ 667.61 [listing applicable crimes]) and has also found certain factual allegations to be true (§ 667.61, subds. (d), (e))." (*People v. Anderson*, *supra*, 47 Cal.4th at p. 102.) As pertinent here, forcible rape (§ 261, subd. (a)(2)), is a qualifying felony sex offense (§ 667.61, subd. (c)(1)), and one of the applicable factual allegations is committing an enumerated offense against more than one victim. (§ 667.61, subd. (e)(4).)

Section 667.61, subdivision (b), provides that a defendant who is convicted of a qualifying felony sex offense "under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life." However, subdivision (b) specifies that it applies "[e]xcept as provided in subdivision … (j) … or (m)," which provide for harsher penalties for defendants who commit sexual offenses against children.

Appellant was sentenced on count 24 under section 667.61, subdivision (j)(2), which provides for a sentence of 25 years to life for a person convicted of "an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age." Section 667.61, subdivision (m), also provides for a sentence of 25 years to life, but applies to a person convicted of "an offense specified in subdivision (n) under one of the circumstances specified in

26.

subdivision (e), against a minor 14 years of age or older."  Because subdivisions (j)(2) and (m) both apply to the crime of forcible rape (see § 667.61, subds. (c)(1), (n)(1)), the only pertinent distinction here between the two subdivisions is the age of the victim.

**C.      Appellant's sentence on count 24 is unauthorized.  Imposition of the same sentence pursuant to a different subdivision would violate appellant's due process right to fair notice.**

By its express terms, section 667.61, subdivision (j)(2) is inapplicable to count 24. In finding appellant guilty of this count, the jury expressly found that E.M. was a "CHILD VICTIM OVER 14 YEARS" at the time of the offense.  Thus, section 667.61, subdivision (j)(2), which applies only to a crime committed "upon a victim who is a child under 14 years of age," cannot apply to this conviction.

Respondent does not dispute that section 667.61, subdivision (j)(2) was inapplicable, but contends appellant was nonetheless subject to a 25-year-to-life sentence on count 24 pursuant to section 667.61, subdivision (m).  Although subdivision (m) was not alleged in the accusatory pleading, respondent argues appellant nonetheless received sufficient notice to satisfy due process.  We are not persuaded.

The One Strike law expressly requires the prosecution to plead and prove the existence of "any circumstance specified in subdivision (d) or (e)."  (§ 667.61, subd. (o).) But while compliance with this statutory requirement alone is required, it is not necessarily sufficient to satisfy due process.  (*People v. Jimenez* (2019) 35 Cal.App.5th 373, 397.)  A One Strike allegation must also provide fair notice of the prosecution's election to seek an enhanced sentence.  (*In re Vaquera* (2024) 15 Cal.5th 706, 719 (*Vaquera*).)  Although due process does not require " 'rigid code pleading,' " the accusatory pleading must "provide the defendant fair notice of the particular One Strike sentence the prosecution is seeking and of which facts it intends to prove to support that sentence."  (*Id.* at pp. 719–720.)

Recently, in *Vaquera*, our high court held that the trial court's imposition of a 25-year-to-life sentence pursuant to section 667.61, subdivision (j)(2), violated due

process because the information only alleged a multiple victim circumstance under subdivision (b) of the One Strike law, which mandates a sentence of 15 years to life. (*Vaquera*, *supra*, 15 Cal.5th at p. 712.)  The court reasoned the language of the accusatory pleading suggested the prosecution had exercised its discretion not to seek a 25-year-to-life sentence under section 667.61, subdivision (j)(2).  (*Vaquera*, *supra*, 15 Cal.5th at p. 721.)  Additionally, the accusatory pleading did not specify that the prosecution intended to rely on the victim's age to seek such an enhanced sentence.  (*Id.* at p. 724.)  This lack of fair notice violated due process because the defendant did not receive timely notice of his increased exposure, limiting his ability to make informed decisions about the case or fashion a defense strategy.  (*Id.* at p. 726.)  Accordingly, the high court reversed the judgment and directed the trial court to strike the 25-year-to-life sentence imposed under section 667.61, subdivision (j)(2), and resentence the defendant to 15 years to life under section 667.61, subdivision (b).  (*Vaquera*, *supra*, 15 Cal.5th at p. 728.)

We conclude *Vaquera* is applicable here.  Count 24 of the information included a multiple victim allegation under the One Strike law, but specified it was "within the meaning of Penal Code sections 667.61(j)(2) and (e)" because the victim was "a child under 14 years of age."  It did not include any reference to section 667.61, subdivision (m).  This deprived appellant of his right to fair notice of the factual basis on which it sought an enhanced sentence.  (*Vaquera*, *supra*, 15 Cal.5th at pp. 719–720.)

Respondent attempts to distinguish *Vaquera*, arguing that the section 667.61, subdivision (j)(2) allegation provided sufficient notice, because section 667.61, subdivision (j)(2) and section 667.61, subdivision (m), both mandate a 25-year-to-life sentence.  Therefore, respondent contends the allegation placed appellant on notice that he faced a maximum term of 25 years to life on count 24, even though it listed an inapplicable subdivision.  However, due process requires not just notice of a possible sentence but notice of the facts the prosecution intends to prove to support that sentence.  (*Vaquera*, *supra*, 15 Cal.5th at pp. 719–720.)  The One Strike law allegation in count 24

28.

specified it was based on the victim being "a child under 14 years of age." This is plainly inconsistent with the factual requirements for imposing an enhanced sentence under section 667.61, subdivision (m).

We also reject respondent's suggestion that appellant should have known that the prosecution intended to rely on a different subdivision. Count 24 expressly referenced section 667.61, subdivision (j)(2), and contained a myriad of contradictory language regarding the age of the victim. It would be unreasonable to expect appellant to deduce from this language that the prosecution actually intended to seek an enhanced sentence under section 667.61, subdivision (m).

To conclude, appellant's sentence on count 24 of 25 years to life pursuant to section 667.61, subdivision (j)(2), is unauthorized, and must be stricken. Imposition of a 25-year-to-life sentence on count 24 pursuant to section 667.61, subdivision (m), would violate appellant's due process right to fair notice.

Appellant does not dispute that the jury found true the multiple victim circumstance (§ 667.61, subd. (e)(4)), and that count 24 remains subject to the enhanced penalty provisions of the One Strike law under section 667.61, subdivision (b). At resentencing, should the trial court find these provisions apply, it should resentence appellant to 15 years to life in accordance with section 667.61, subdivision (b).

## V. Appellant's Sentence of 25 Years to Life on Count 28 is Unauthorized.

Appellant was convicted in count 28 of a violation of section 288.7, subdivision (b). A conviction under this section "shall be punished by imprisonment in the state prison for a term of 15 years to life." (§ 288.7, subd. (b).)

At sentencing, the trial court orally pronounced the sentence on count 28 to be 25 years to life. The indeterminate abstract of judgment reflects this sentence. While the minute order from the sentencing hearing states the court sentenced appellant on count 28 to 15 years to life, "[t]he record of oral pronouncement of the court controls over the clerk's minute order." (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.)

29.

The parties agree, as do we, that the sentence of 25 years to life on count 28 is unauthorized.  When appellant is resentenced following remand, the trial court shall resentence appellant on count 28 in conformity with the express statutory language of section 288.7, subdivision (b).

The parties also agree that the indeterminate abstract of judgment incorrectly states that appellant was convicted in count 28 of a violation of section 288.7, subdivision (a).  Following resentencing, the trial court shall ensure the amended abstract of judgment correctly reflects that appellant was convicted in count 28 of a violation of section 288.7, subdivision (b).

## VI.     We Need not Address Appellant's Section 654 Claims Because the Trial Court Must Conduct a Full Resentencing.

Appellant claims the trial court should have stayed his sentence on counts 25 through 28 pursuant to section 654, subdivision (a), contending these counts are based on the same conduct as counts 29 through 32.

At sentencing, appellant's counsel requested the court impose concurrent sentences on some counts but did not ask the court to stay any part of his sentence pursuant to section 654, subdivision (a).  The trial court made no express findings as to the applicability section 654, subdivision (a).

We need not address appellant's section 654 claims because we have already determined appellant must be remanded for resentencing.  Because appellant is entitled to a full resentencing, he may raise the instant claims below when he is resentenced.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant."].)  We express no opinion regarding the potential applicability of section 654, subdivision (a) to appellant's sentence.

## **DISPOSITION**

The sentences imposed on counts 24 and 28 are stricken.  Appellant's sentence is vacated, and the matter is remanded for resentencing.  At resentencing, the trial court shall exercise its discretion whether to impose consecutive or concurrent sentences on counts 1-3 and 25-32.  The trial court shall also resentence appellant on counts 24 and 28 in conformity with the opinions expressed herein and applicable sentencing authority.  Following resentencing, the court shall forward a new indeterminate abstract of judgment to the appropriate authorities.  The amended indeterminate abstract of judgment shall reflect that appellant was convicted in count 28 of a violation of section 288.7, subdivision (b).  In all other respects, appellant's judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


PEÑA, J.

31.